WESTERN UNION TELEGRAPH CO. v. J. M. ALLEN.

1. TELEGRAPH COMPANIES. *Negligence. Liability to sendee.*
   A telegraph company in assuming to transmit and deliver a message assumes a duty not only to the sender but also to the person to whom it is addressed, and for negligent delay or other breach of duty in reference thereto an action will lie in favor of the sendee, although he has paid nothing for its transmission.

2. NEGLIGENCE OF TELEGRAPH COMPANIES. *Statutory penalty.*
   If any telegraph company shall neglect, fail, or refuse to transmit and deliver, within a reasonable time, without good and sufficient excuse, any message delivered to it for such purpose, the person injured shall recover the sum of twenty-five dollars in addition to such damages as are now allowed by law. Acts 1886, p. 91.

3. SAME. *Act of March 18, 1886; in whose favor applicable.*
   This statute applies in favor of the sendee as well as the sender of the message.

FROM the circuit court of Lee county.

HON. LOCK E. HOUSTON, Judge.

The three telegrams, for the negligent delay of which this suit for the statutory penalty was brought by the sendee, were as follows :

1.                    "CORINTH, MISS., November 28, 1887.
"To JOHN M. ALLEN :
"Must go North in morning; mighty sorry not to see your moth-eaten head.                    "D. B. HENDERSON."

2.                    "BOONEVILLE, MISS., December 28, 1887.
"To JOHN M. ALLEN :
"Come on first train without fail; wrote you at Guntown.
                    "LELIA STREET."

3.                    "GRENADA, MISS., 19,      .
"To JOHN M. ALLEN :
"Will leave Memphis Monday night, by Memphis & Charleston. Join me; answer.
                    "E. C. WALTHALL."

The agreed statement of facts recites as follows : " As to the first telegram it is agreed that plaintiff was expecting a telegram from Henderson, and would have understood the same if he had received it, and, had the message been delivered in a reasonable time by defendant, he would have gone to Corinth at once to join said Henderson, and because of the non-delivery thereof was deprived of the benefit and pleasure of said Henderson's company to Washington.

" As to the second telegram it is agreed that it was an invitation by the sender to the plaintiff to attend a big party and supper given by the sender. That plaintiff would have gone if said message had been delivered in a reasonable time, and was deprived of the pleasure of going to Booneville to visit the sender and enjoying the supper, by the non-delivery of the telegram in a reasonable time.

" As to the third telegram it is agreed that if plaintiff had received the same he would have gone to Memphis to meet the sender and accompany him to Washington, and that because of the failure of defendant to deliver the message in a reasonable time plaintiff was deprived of the pleasure and benefit of the sender's company to Washington.

" That plaintiff did not sue for nor claim any actual damages, but only twenty-five dollars, the statutory penalty for non-delivery of each telegram, making the sum of seventy-five dollars."

The judge, who by consent tried the cause in the absence of the jury, awarded the plaintiff the sum claimed, and the defendant appealed.

*Sykes & Richardson*, for appellant.

1. The messages were sent for the benefit of the senders, and were not intended primarily or otherwise to benefit the appellee. This appears on the face of each message. This being true, there is no ground for the interpretation, that the senders intended to part with their right of action for a breach of the contract. Gray, Com. by Tel., § 67 ; *Ry. Co.* v. *Levy*, 59 Tex. 563.

2. In *Playford* v. *Telegraph Co.*, Allen Telegraph Cases 437, it was held that a sendee cannot maintain an action, although he

may sustain pecuniary damage by reason of the failure to deliver, etc., unless the sender sustains the relation of agent of the sendee. Our courts, while not carrying the doctrine thus far, yet hold uniformly that the sendee cannot maintain an action without averment and proof of *some pecuniary injury. Ry. Co.* v. *Levy, supra ;* Woods Mayne on Damages 74.

3. The act of 1886, p. 91, does not change the rules above announced, but for the violation of these rules a penalty of twenty-five dollars is superadded in each case. The statute proceeds upon the idea that, before the party is entitled to the penalty, he must sustain an injury—not that he has been offended in his dignity, or distressed mentally—but has been injured in his purse or his person, not *damnum absque injuria,* but an actual *injuriam.* The statute is explicit, "the person injured," etc. The injury must precede the penalty, which is only allowed *in addition* to other and actual damages.

4. The messages being purely of a social character, preclude the idea of injury or damage to the sendee. The only persons who could have been injured were the senders, who paid for the service of the wires.

*Allen, Robins & Stribling,* for appellee.

1. The case involves a construction of the act of 1886, p. 91. The contention by appellant is, that "the person injured" can refer only to those sustaining pecuniary loss. According to the usual and popular meaning of the word "injured," pecuniary loss cannot be necessary to constitute injury. The definition of injury by Webster, and also by Bouvier, makes it plain that the element of pecuniary loss or personal harm is not necessary.

(Counsel examined the statute in the light of the rules of construction applicable to statutes, contending that the context as well as preamble of the statute shows the intention of the legislature. An examination of the old law, the mischief and the remedy fortify appellee's conclusion. The "old law" was that liability existed only when there was pecuniary loss. The "mischief" was that telegraph companies would not transmit and deliver messages promptly. The "remedy" was to impose a penalty, and prevent the companie

from escaping liability for their negligence merely because no pecuniary loss resulted.)

While penal statutes are to be strictly construed, it must not be so as to defeat the clear intention. 1 Blacks. Com. 88. In reference to the construction of statutes counsel cited: *Dixon* v. *Doe,* 1 S. & M. 70; *Painter* v. *Trotter,* 10 Ib. 537; *R. R. Co.* v. *Hemphill,* 35 Miss. 17; *Green* v. *Weller,* 32 Ib. 650; 43 Ib. 687.

2. The penalty is given as a punishment, and is not in lieu of other damages, but in addition to them, and independent thereof. It is given to the party injured or aggrieved or afflicted, and no actual damage need be alleged or proved. 41 Ark. 79; Am. & Eng. Cor. Cases 102.

3. The sendee of a message can maintain the suit. A different rule prevails in England, but it is not followed in this country. For a review of the authorities see *Telegraph Co* v. *Brown,* 14 Am. & Eng. Cor. Cases 155 and note, and especially we refer to *Markle* v. *W. U. Tel. Co.,* West. Rep. (Mo.) 408.

Cooper, J., delivered the opinion of the court.

By an act approved March 18, 1886 (Acts of 1886, page 91), it is provided " that if any telegraph company shall neglect, fail, or refuse to transmit and deliver, within a reasonable time, without good and sufficient excuse, any message delivered to it for such purpose, the person injured shall receive (recover) the sum of twenty-five dollars in addition to such damages as are now allowed by law."

The appellee was the sendee of three messages of a social character, which were not delivered within a reasonable time, without excuse, and for such neglect to deliver, he instituted this action to recover the statutory penalty, claiming no other damages.

There is an agreed statement of facts on which the case was tried, by which it appears that each of the several messages was delivered to the company for transmission and the charges paid by the sender; that the messages were of no pecuniary value to appellee, and that he has sustained no pecuniary loss by the failure to deliver them.

Appellant contends that the statute only gives the penalty it imposes to the party "injured" by the neglect, and that it is given "in addition to such other damages as are now allowed by law," and that a sendee of a message has no right of action against a telegraph company for neglect to deliver.

The important question is thus presented to the court whether any duty is assumed by a telegraph company to the person to whom a message is addressed who has paid nothing for its transmission, for breach of which an action will lie in his favor.

It is well settled in England that under such circumstances no action can be maintained, even though the company negligently delivers a different message than that it received, by reason of which the sendee, acting on the message delivered to him, sustains pecuniary loss.

In America the contrary rule is announced where injury results from the delivery of a message other than that transmitted, but the courts are not agreed upon the principle upon which the action rests. In his work, Communications by Telegraph, Mr. Gray classifies the decisions made by the American courts on this subject, and declares that no satisfactory ground has been found, on which, in analogy to legal principles, the liability of the company can be rested. As stated by him the liability has been put upon some one of the following grounds :

1. That, as a telegraph company is in the exercise of a public, as distinguished from a private, calling, it is the common agent of both parties to a telegraph message, or a public agent liable to any one injured by its negligence.

2. That the person addressed is the beneficiary of a contract.

3. That the message is the property of the person addressed, the position of such person being analogous to that of a consignee of goods.

4. That the sendee is the principal of the telegraph company in those cases where he originally employed the company. Gray on Communications by Telegraph 117 to 122.

While it may be difficult to reply to the criticisms of the grounds upon which the American decisions rest, it must be regarded as

settled by an almost unbroken current, that the telegraph company is under responsibility to the sendee, at least in those cases in which injury results from the delivery of an altered message. Mr. Bigelow suggests as a satisfactory ground for holding the company liable under such circumstances, the fact that communication by telegraph is usually resorted to only in matters of importance, by reason of which the company ought to infer that its transmission is a matter of consequence, and that a "mistake in its transmission will be likely to produce damage to the receiver, by causing him to do that which otherwise he would not do. Knowing then the probably evil consequences of transmitting an erroneous message, they owe a duty to the receiver of refraining from such act; and if (by negligence) they violate this duty, they must, on plain legal principles, be liable for the damage produced." Leading Cases on Torts, 602.

It will be noted that this proposed solution of the difficulty begins with the assumption that the telegraph company by accepting the message comes under the obligation of a "duty" to the sendee.

If it be true as suggested that the telegraph company by accepting the message for transmission comes under a duty to the addressee, it does not seem to be difficult to find equal liability for delay in its transmission, or for failing to deliver, as exists for the delivery of an altered message. Delay or neglect to deliver is as much a breach of duty, if a duty exists, as is the delivery of an altered message. The reason of the existence of such companies, is not that by them messages may be more accurately transmitted than by the ordinary means of communication, but it is because they may be more rapidly transmitted, and it cannot be seriously contended that a telegraph company might be liable for an erroneous delivery on the ground that the nature of its business indicated to it the importance of delivering the exact message sent, and at the same time its responsibility denied for damages caused by delay in delivering the message, because it is not advised by the nature of its business of the importance of speedy delivery.

The English courts end all controversies by declaring that the obligation of the company is to the sender alone; that it owes no

duty to the sendee, and because it does not, is not liable either for delay or for the delivery of an altered message. The key to the question is whether a duty exists to the sendee. If it does, and there is a breach of that duty, the consequence is and must be responsibility for the injury that flows from the breach. It is admitted that the almost universal doctrine of the American courts is that a telegraph company is liable for damages resulting from the delivery of a changed message. It cannot be denied that no such liability would result from a negligent mistake of a private person. The conclusion is inevitable that a different rule is applied in the one case than in the other ; it is equally certain that the reason of the difference is, that telegraph companies perform public duties ; *i. e.*, are devoted to public service and the interest of the public can only be conserved by holding them liable under circumstances where no liability would attach to the default of private persons. Telegraph companies are essential agents in the transactions of commerce. They have found and occupied a field peculiar to themselves, which neither their interest, nor the welfare of the world, can permit to be again vacant. Their rights, duties, and responsibilities are neither that of common carriers, of agents, bailees, or servants. They are independent transmitters of intelligence, acting for themselves in and about the business of others. In the very nature of things they are relied on equally by those who transmit and those who receive messages committed to their hands. The injury that follows the neglect may be at one or the other end of their line, or at both at once, and of this they are informed by the very nature of the business in which they are engaged. It may be safely said that there are thousands of persons, sendees of messages, who are daily subjected to danger of loss by reason of delay or error in the transmission of telegraph messages, to one who, in the early history of the English law, relied upon the services of the common carrier. The courts then, as the courts now, conscious of the needs of the public, expanded the principles of the law, fitted them to the exigencies of the occasion, and imposed a degree of liability unknown to other contract relations, but required for the safety and protection of the public. The rule that a husband was entitled to

curtesy in the equitable estate of the wife was denied application to the case where the wife claimed dower in the equitable estate of the husband, for the reason that the public had acted upon a contrary belief; and yet it is impossible to give a logical reason why it should not have been applied in the one instance as well as the other. The system of laws peculiar to partnerships was created by the courts because of a necessity for its existence. There is probably no principle on which the courts have agreed, or which is consistent with the body of the laws, from which the liability of municipal corporations for injury to a traveler resulting from defective ways can logically be drawn. Instances might be multiplied in which courts, pressed by the public necessities, and in the absence of legislative remedy, have afforded relief. So it is with reference to the class of cases now under consideration. The courts, impressed with the justice of the claim of him who has sustained injury to compensation from the delinquent who has caused it, have on one or another analogy afforded relief. It may be admitted that technical objections can be made to the application of each and every principle, in analogy to which they act. To those decisions in which the telegraph company is treated as bailee, it may be objected that a bailee is one who receives property and that intelligence is not property subject to bailment. To those which deduce the liability from the principles of agency, that the company is agent only for him who employs it. To those which hold that the sendee may sue upon the contract as one made for his benefit, that one not a party to an executory contract has no right of action on it. To those which declare that the telegraph company is in the exercise of a public employment, and is responsible for any breach of duty, that it owes no duty to the public as individuals except to contract with each on his demand, and that there is no contract save with the sender of the message. It yet remains true that the courts on some one or the other of these grounds, have steadily adhered to the rule of liability. The fundamental principle is that there is some breach of duty, and whether this duty is logically deduced from any well-recognized rules applicable to other relations becomes immaterial when there is a consensus of judicial opinion as to its existence.

We are content to take our place in the line of American authorities, and without assenting fully to either of the processes of reasoning by which the result has been reached, to accept as settled the rule of liability because the telegraph company is a public agent, and as such, from the peculiar character of its business, is connected with the sendee of the message so far as to impose upon it a duty to deliver the intelligence intrusted to it for him. / Whether this be property or simply an intangible thing of value to him, it is that which the company is under duty to communicate according to its course of business, and delay in the delivery is as much a breach of duty as the delivery of an altered message, and, in either event, recovery may be had by the sendee.

In the case under consideration, though no pecuniary injury was sustained, there was a violation of the legal right of appellees, and a consequent right to recover damages, though nominal, and to this is added the penalty given by the statute.

*The judgment is affirmed.*