## J. A. SHINGLEUR & CO. v. WESTERN UNION TELEGRAPH CO.

1. TELEGRAPH MESSAGE. *Negligent transmission. Liability. Nature of.*
   The relation of a telegraph company in the transmission of messages is not that of agent, either for the sender or the sendee, but that of an independent principal—a transmitter of intelligence, owing a public duty. As such, it is liable to the sender in contract or in tort, but to the sendee only in tort.

2. SAME. *Altered message. Sender not bound by. Remedy of sendee.*
   The sendee cannot hold the sender to the terms of a telegram materially altered in transmission.

3. SAME. *Directing sale. Alteration. Sender not bound. Moral obligation.*
   Where a message directing the sendee, a broker, to sell for account of the sender, cotton at a designated price, is negligently altered in transmission, whereby the sendee contracts to sell for a less price, if the sender knows of the error before he delivers the cot-

ton, he may refuse delivery.   If, however, notwithstanding this, he makes delivery, though constrained by desire to maintain his business standing. he cannot recover of the telegraph company for his loss.

From the circuit court of the first district of Hinds county. Hon. J. B. Chrisman, Judge.

Action by J. A. Shingleur & Co. against the Western Union Telegraph Company, to recover for loss sustained through the delivery of an altered message.   The case was tried before the court without a jury on an agreed statement of facts, the material parts of which are as follows:

J. A. Shingleur & Co. were cotton buyers in Jackson, Miss., and had five hundred bales of cotton to sell.   They delivered to the operator of defendant, at Jackson, a cipher message, directed to Appleton, Dickson & Co., Boston, Mass., in the following words, as translated: ''Sell five hundred bales strict middling one half grade above and below Jackson cotton, good style, at eight and one-half cents per pound.''   In the transmission a word of the cipher code was altered, so that, as delivered, it directed a sale at eight and five-sixteenths cents per pound.   Appleton, Dickson & Co. were brokers in Boston, and the correspondents of Shingleur & Co., and, on receipt of the telegram, sold for them at the price of eight and five-sixteenths cents.   They acted throughout for Shingleur & Co. as undisclosed principals, but signed their own names, and delivered to the purchaser of the cotton what are called sale notes.   They promptly notified Shingleur & Co. of the sale and its terms, whereupon the latter, being thus apprised of the error, telegraphed in reply, advising Appleton, Dickson & Co. thereof, but they answered that it was too late to withdraw from the sale, as sale notes had been given the purchaser.   It is admitted that, while these notes were signed by Appleton, Dickson & Co., the contract was intended to be the contract of Shingleur & Co., as undisclosed principals.

The cotton was delivered by Shingleur & Co. after notice of

the error, and, in explanation of this, J. A. Shingleur, senior member of the firm of J. A. Shingleur & Co., testified: "There was no agreement that Appleton, Dickson & Co. could, or could not, enforce a contract with us to deliver cotton where there was a mistake in a telegram. That is a mere business obligation, and we had to fulfill or lose our credit. It was a moral sentiment. It was our interest to do it."

It was agreed that the loss sustained by Shingleur & Co. was $470, and that this is the measure of damages if plaintiffs are entitled to recover.

Several defenses were pleaded having reference to the character of the message as being in cipher and its purport and importance being unknown to defendant's agents, and as to its being an unrepeated message, but the opinion of the court renders it unnecessary to set out the facts as to these matters.

There was a judgment for defendant, and plaintiffs appeal.

*Calhoon & Green,* for appellants.

Shingleur & Co. were the senders of the message, paid the toll, the thing transmitted was theirs, and the delivery was to their agents, who, upon the direction thus given, acted and made a contract binding on Shingleur & Co., as undisclosed principals, and which could not be recalled. Shingleur & Co. were bound to Appleton, Dickson & Co., because the agent employed by them to transmit the message was negligent, and did not transmit it correctly.

It is well settled that either party injured may recover. Gray on Tel., § 104; *Tel. Co.* v. *Allen,* 66 Miss., 549; *Daughtry* v. *Tel. Co.,* 75 Ala., 168. The rule of liability should be enforced in favor of the sendee. See *Rose* v. *Tel. Co.,* Allen Tel. Cas., 337. The relation of telegraph companies is that of public transmitters of intelligence, acting for themselves, in and about the business of others. They owe, and are performers of, public duties, and a degree of care and liability is imposed on them, required for the safety and protection of the

public. *Tel. Co. v. Allen, supra.* They cannot escape liability to one injured by their negligence in discharging such public duty, nor can they stipulate against their negligence.

*Mayes & Harris,* for appellee.

It will hardly be contended that Shingleur & Co., if not legally bound to deliver the cotton, could create a cause of action against defendant by making delivery after discovery of the error. The message, as delivered, was not the message the telegraph company was authorized to deliver. There was no meeting of the minds of the parties, and, therefore, no binding contract. If plaintiffs delivered under stress of a moral sentiment, and because it was to their business interest to do so, that was their own affair, and could not create a right of action. The sender does not make the telegraph company his agent in the sense that he is liable for its errors in transmission. Gray on Tel., 184 *et seq.;* Bigelow Lead. Cas. on Torts, 625–627; 87 Tenn., 554; 100 N. C., 28. This is the settled English and Scotch rule.

We take issue with Thompson on Electricity, when it says the settled American doctrine is to the contrary. The authorities are divided; and the better reason and authority support our view. As to the right of the plaintiffs to sue, see *Rose* v. *Tel. Co.,* Allen Tel. Cas., 337.

WHITFIELD, J., delivered the opinion of the court.

The first contention of appellee is, that the sender does not make the telegraph company his agent in such sense that it renders him liable to the sendee in case an altered message is delivered to the sendee. The negative of this proposition is maintained by the English courts, which hold that the liability of the telegraph company arises entirely out of contract, and, hence, that the sendee, not being in privity with the company, can never sue the company. *Playford* v. *Tel. Co.,* Allen's Tel. Cas., 437; *Henkel* v. *Pape, Ib.,* 567. This view is also urged with great clearness and power in Gray on Telegraph,

§ 104 *et seq.*, and § 78, and in Bigelow's Lead. Cas. on Torts, pp. 621–6; but the strongest reasoning in support of this view which we have found in any case, English or American, is in *Pepper* v. *Tel. Co.*, 87 Tenn., 554 (4 Law. Rep. Ann., 660), decided in 1889. This case contains an exhaustive review of the authorities, and holds that the minds of the parties in case of an altered message have never met, and that neither can be bound to the other, unless the telegraph company is the agent of the sendee, and this is repudiated on principle and authority. The English view, in so far as it predicates the right of the sendee to sue on contract alone, leads to one very manifestly unjust result, to wit, that since the sendee cannot sue the company (as held in *Playford's Case, supra*), nor the sender (as held in *Henkel's Case, supra*), he is remediless.

According to what is called the American doctrine (Gray on Tel., § 104, note 3; Thompson on Electricity, § 426), the affirmative of the proposition under discussion is maintained, representative among the cases so holding being *Rose's Case*, Allen's Tel. Cases, p. 337, in which case the principal was disclosed and the agent not bound. In *De Rutte* v. *Tel. Co.*, 30 How. Pr. (N. Y.), 403, it was held that the party interested in the dispatch, whether sender or sendee, was the one who really contracted with the company, and that such person could sue in contract. In *Tel. Co.* v. *Dryburg*, 35 Pa. St., 298, the supreme court held that the company was the agent of both sender and sendee, upon very unsatisfactory reasoning, and, hence, either can sue in contract.

Turning from this view of the right of the sendee to sue the company in contract, and putting the right to sue on the ground that, in case of delivery of an altered message upon which the sendee has acted to his damage, the sendee's right to sue is in tort for the injury to him, the wrong and the consequent damage, we find this view clearly and universally upheld by the American authorities. Gray on Telegraph, § 78; Thompson on Electricity, §§ 427, 428, 430, 448; *Dryburg's Case*, 35 Pa.

St., 298, Sharswood's opinion; *Rose's Case*, Allen's Tel. Cases, p. 340; Bigelow's Lead. Cas. on Torts, 614 *et seq.;* 87 Tenn., 554; 15 Am. St. Rep., 109. *Rose's Case*, in so far as it held that the sendee could not sue in that case, because the principal was the injured party and could himself alone sue, is said by Mr. Gray (§ 78) to be open to criticism, and held unsound on that ground by other authorities. Mr. Thompson suggests (§ 424) as an additional reason why the sendee should be allowed to sue, the consideration that the sender might, in a given case, be insolvent, and in § 427, puts the matter on the best ground. He says: "The true view, which seems to sustain the right of action in the receiver of the message, or in the person addressed, where it is not delivered, is one which elevates the question above the plane of mere privity of contract, and places it where it belongs—upon the public duty which the telegraph company owes to any person beneficially interested in the message, whether the sender, or his principal where he is agent, or the receiver, or his principal where he is agent." This is the doctrine of this court in *Allen* v. *Tel. Co.*, 66 Miss., 549. This review of the authorities will sufficiently indicate how the courts, in dealing with this purely modern agency, have been groping their way in their search for the true ground of liability, uselessly conjuring up analogies that do not exist, and misled by the apparent applicability of the doctrines of agency as existing between private individuals. The view last above given discards absolutely the doctrine of agency, as applied between private individuals, as suiting the case of the liability of a telegraph company to sendee or to sender. It treats the telegraph company as an institution *sui generis*, a system unto itself, an independent transmitter of intelligence, an independent contractor, or (as Mr. Bigelow and Judge Sharswood most simply and best put it) as an independent principal. It is liable to the sendee in tort alone, as principal; it is liable to the sender in contract or in tort, as principal. It is not liable to either as agent in any proper sense. 14 Am. & Eng.

Cor. Cases, p. 147; 11 Ill. App. (Brad.), 289, and authorities
cited. "Whether the agency is special or general, the author-
ity delegated governs in all questions arising between the prin-
cipal and his agent out of the agency. Whether the agency is
general or special, a principal is responsible to a third person
dealing *bona fide* with his agent, either when the agent acts
within the scope of the authority actually conferred upon him
by the principal, or when the agent acts within the scope of
the authority which he has been held out by the principal as
possessing. But, whether the agency is general or special, a
principal is not responsible to a third person dealing with his
agent, where that agent acts beyond the scope of both these
authorities. . . It is clear that a telegraph company is
actually authorized by its employer to communicate a certain
message, and a certain message only. It is also clear that it is
not held out by him as possessing an authority to communicate
any as distinguished from a certain message. The delivery,
therefore, of an altered message is the delivery of a message
which the company, neither as general nor special agent, had,
or was held out as having, any authority to deliver; and the
liability to the sender is that of an independent principal. It is
perfectly obvious that the company is not the servant of the
sender—the sender has no authority to control the company as
to the manner in which it does the act." Gray on Law of Tele-
graph, § 104 *et seq.* The steady growth of this view is shown
by the statutes of all the states, imposing upon the company
the duty of receiving and sending messages for all persons,
with the various regulating provisions embraced in those
statutes, thus making what had been, prior to such statutes,
merely the duty implied by the law from the peculiar nature
of the business of telegraphy, after such statutes a statutable
public duty. And now we have gone the further and com-
pleter step indicated in § 195 of the constitution of 1890, all
which enforces the justness of the declaration in 66 Miss., 555:
"The courts then (in the early history of the English law,

dealing with common carriers), as now, conscious of the needs
of the public, expanded the principles of the law, fitted them
to the exigencies of the occasion, and imposed a degree of
liability unknown to other contract relations, but required for
the safety and protection of the public."

It is also true that the sender may sue the company in tort,
as well as in contract, in the case of an altered message.    Mr.
Cooley says: "In many cases an action as for a tort, or an ac-
tion as for a breach of contract, may be brought by the same
party on the same state of facts."    Cooley on Torts, pp. 103,
104.    So, Mr. Bigelow says: "The fact that a contract ex-
isted, and was broken at the same time and by the same act or
omission by which the plaintiff's cause of action arose, is only
one of the accidents of the situation.    The defendant owed, in
respect of the same thing, two distinct duties—one of a special
character to the party with whom he contracted, and one of a
general character to others.  .  .    The duty, therefore, does
not grow out of the contract, but exists before and independ-
ently of it."    Again: "What does it mean when it is said that
even this contractee (appellant answering to the contractee) may
sue in tort or in contract for his damages ?    Certainly, nothing,
unless that the original duty which the defendant, before the
contract, owed to all alike, still survives, even towards his
contractee."    And, without prolonging this opinion on this
point, it is sufficient to refer to Bigelow Lead. Cas. on Torts,
pp. 614, 617; also, pp. 586, 587, and to the elaborate discus-
sion in *Rich* v. *Railroad Co.*, 87 N. Y., 382.

But, whether looked at in the light of contract or of tort,
plaintiffs' case comes inevitably to this: That plaintiffs, at a
time when they knew fully of the mistake in the telegram, and
when they could have delivered or refused to deliver the cotton,
and when—the minds of plaintiffs and of Appleton, Dixon & Co.
never having met, and there being, as to this sale, no contract
made between them, plaintiffs being, therefore, under no legal
liability to deliver the cotton—nevertheless, acting on the sen-

timent that they would themselves protect their agent (already fully protected by the liability in tort of the company to such agent), and maintain their business credit, did deliver the cotton anyhow, and, having done so, now seek to hold the company. Can the action be maintained?

The only case holding that the action can be maintained, so far as our research has gone, is *Tel. Co.* v. *Shotter*, 71 Ga., 760. The facts in this case are identical with those in *Pepper* v. *Tel. Co.*, 87 Tenn., *supra*, where the court, after an elaborate review of the American authorities, say: "As already stated, Mr. Gray not only shows that, upon principle, the English holding is correct, but, while listing the cases above cited as indicating a contrary view, states that most of them are *dicta*. There is but one case referred to by him which directly adjudges that the sender of a telegram is bound to the receiver by the terms of the message as negligently altered by the company. That is the case of *Tel. Co.* v. *Shotter*, 71 Ga., 760. With great respect for the high character of that learned tribunal, we cannot approve the line of reasoning pursued or the conclusion reached. The learned judge places his conclusion, in part, on the fact that, in England, the government has charge of the telegraph lines, and upon the idea that a merchant or business man would lose all credit and commercial standing were he to refuse to make good to his correspondent the contract contained in his message as delivered. We cannot see how the fact of governmental charge of the telegraph system can make any difference, for in this country the sender is as impotent to control and direct the movements and conduct of the telegraph company as if it were under the government; nor can we see how the commercial standing of the sender who remits his correspondent to his recourse on the telegraph company for such injury as may result from the erroneous message, can be affected."

So the case of *Harrison* v. *Tel. Co.*, 10 Am. & Eng. Corp. Cas., 600, is a case directly in point and stronger in its facts for plaintiff

than this case. These plaintiffs, in Texas, wired Latham, Alexander & Co., in New York, to purchase one hundred bales of cotton. As delivered, the telegram directed them to sell one hundred bales. Latham, Alexander & Co. sold, without plaintiffs knowing anything of the error, and a loss resulted to plaintiffs of $129.50, which, later, on settlement with Latham, Alexander & Co., plaintiffs paid, claiming they were compelled to pay. The court say: "The mistake which occasioned the loss was a mistake of the telegraph company, and not of the plaintiffs, and plaintiffs were not bound to pay or make good said loss to Latham, Alexander & Co., and, if they made such payment, were not responsible or liable therefor, and could not hold the company liable over to them for repayment." This, too, in a case where the loss had been sustained without knowledge on plaintiffs' part of the error. To the same effect are *Henkel* v. *Pape*, Allen's Tel. Cases, 567, and *Verdin* v. *Robertson, Ib.,* 697. It is not necessary to go so far, and we express no opinion as to what would be the law had plaintiffs here not known, before they acted, all about the mistake. In *Pepper's Case* and *Shotter's Case*, the goods had been shipped to the place of residence of the sendee, and loss, to some extent, was inevitable to the sender. As held in *Pepper's Case*, it was the plaintiff's duty, in view of all the circumstances, to make the loss as small as possible, and that he could then recover for such loss, as being himself to that extent—a loss thus legally sustained— the injured party. Mr. Gray correctly remarks (Law of Tel., p. 185, note 1), that *Shotter's Case* put the liability upon "a moral and not a legal ground." Here, appellants had shipped no goods, had incurred no legal liability, had merely to refuse to comply with the terms of a contract they had never made, and remit Appleton, Dixon & Co. to their adequate remedy against the company. Their payment was voluntary and gratuitous, and cannot, on any sound or just principle, create for them a cause of action where none existed prior to such voluntary payment.

The declaration in this case recognizes the fact that plaintiffs would have to be legally bound to Appleton, Dixon & Co., and alleges that plaintiffs were so bound. Shingleur, in his testimony, says: "There was no agreement that they (Appleton, Dixon .& Co.), could, or could not, enforce a contract with us to deliver cotton, where there was. a mistake in a telegram. That is a mere business obligation, and we had to fulfill or lose our credit. It was a moral sentiment. It was to our interest to do it."

Under the view we have taken, it becomes unnecessary to consider the stipulations in the telegram, or § 195 of the constitution. The judgment is

*Affirmed.*

COOPER, C. J., dissents.