# Postal Telegraph Cable Co. v. Ford.

*Action against Telegraph Company to recover Damages for Negligence in Failing to Deliver Message.*

1. *Telegraph company; action for failure to promptly deliver message; when sendee can maintain action.*—The person to whom a telegram is addressed can not maintain an action against a telegraph company to recover damages resulting from a failure to promptly deliver the message, unless he alleges and proves that he was, either directly or by his agent, a party or privy to the contract for the sending and delivery of such message.

2. *Same; same; same.*—In an action against a telegraph company by the sendee of a telegram, to recover damages for failure to promptly deliver said telegram, where the plaintiff alleges in his complaint that the sendee contracted as his agent with the defendant, but the evidence does not sustain this averment, the plaintiff is not entitled to recover.

3. *Same; fact that the sendee will be benefitted by the delivery of the message does not make him a party to the contract.*—The mere fact that the sendee of a telegraph message will be benefitted by its prompt delivery, does not of itself make such sendee a party or privy to the contract for the transmission of the message, so as to entitle him to maintain an action to recover damages resulting from failure to promptly deliver such telegram.

APPEAL from the City Court of Montgomery.

Tried before the Hon. JOHN G. WINTER.

This action was brought by the appellee against the appellant. The facts of the case are sufficiently stated in the opinion.

There was judgment in favor of the plaintiff. The

[Postal Telegraph Cable Co. v. Ford.]

defendant appeals, and assigns as error, among other rulings, the refusal of the court to give the general affirmative charge requested by it.

J. M. FALKNER and RAY RUSHTON, for appellant, cited *Freeman v. West. Un. Tel. Co.*, 13 So. East. Rep. 647 ; *Kinion v. W. U. T. Co.*, 35 Pac. Rep. 75 ; *Walser v. W. U. T. Co.*, 19 So. East Rep. 366 ; *Clay v. W. U. T. Co.*, 81 Ga. 285 ; *Merrell v. W. U. T. Co.*, 78 Me. 97 ; *West. Un. Tel. Co. v. Clifton*, 8 So. Rep. 746.

GRAHAM & STEINER, *contra*, cited *Amer. Un. Tel. Co. v. Daughtery*, 89 Ala. 191 ; *W. U. Tel. Co. v. Henderson*, 89 Ala. 510 ; *W. U. Tel. Co. v. Wilson*, 93 Ala. 32 ; 2 Chitty (16th Am. ed.), pp. 247, 494.

BRICKELL, C. J.—This is an action by the sendee of a telegram against the telegraph company, to recover damages resulting from failure to promptly deliver the telegram at the address designated by the sender ; it is an action *ex contractu*, for breach of the contract alleged to have been made by the telegraph company with the sender "for the benefit, and as the agent of plaintiff;" not *ex delicto*, for breach of duty growing out of the contract, or otherwise arising.—*Wilkinson v. Moseley*, 18 Ala. 288 ; *Mobile Life Ins. Co. v. Randall*, 74 Ala. 170.

In *Western Union Tel. Co. v. Adair*, 115 Ala. 441, it is said : "In the cases decided by this court, in which the sendee of the telegram was plaintiff, the complaint showed that the plaintiff, either directly or *per alium*, was a party to the contract ; and the opinions seem to concede the proposition that, if such relationship did not exist, an action for the breach of the contract could not be maintained by the sendee."

The right of the sendee to maintain an action for damages against the telegraph company, for failure to deliver the message, or for error in the message delivered, has been frequently before the courts. In England it is held that the sendee, in the absence of such facts as make him a party or privy to the contract, has no right of action against the telegraph company.— *Playford v. The United Kingdom Elec. Tel. Co.*, L. R. 4 Q. B. 706 (Allen's Tel. Cases, 437) ; *Dickson v. Reuter's Tel. Co.*, 2 C. P. Div. 62 ; s. c. 3 C. P. Div. 1 ; Gray on

43

Com. by Tel., § 65. In thus holding the English courts apply to telegraph cases the principle established by them, that no cause of action arises in favor of a stranger to a contract because of a breach of duty growing out of the contract.—*Winterbottom v. Wright,* 10 Mees. & Wels. 107.

In this country, there is a lack of harmony both in the conclusions reached by different courts, and in the reasoning upon which the conclusions are based.—Gray on Com. by Tel., §§ 65 *et seq.,* and authorities cited; *Pepper v. Tel. Co.,* 87 Tenn. 554 (10 Am. St. Rep. 699) ; *Shingleur v. Western Un. Tel. Co.,* 72 Miss. 1030 ; s. c., 48 Am. St. Rep. 604 and note.

Whether the sendee has or has not the right to recover *in tort* for failure to deliver a telegram, or for delay in its delivery, without averring or proving a contract to which he is a party or privy, it is clear upon principle, and the proposition is supported by the former decisions of this court, and by the decisions of courts of other jurisdictions, that, without such averment and proof, he can not recover *when his action is based upon contract,* and seeks damages resulting from its breach.—*Western Un. Tel. Co. v. Adair,* 115 Ala. 441, and cases there cited; *Shingleur v. Western Un. Tel. Co.,* 72 Miss. 1030 (48 Am. St. Rep. 604) ; *Western Un. Tel. Co. v. Dubois,* 128 Ill. 248 (15 Am. St. Rep. 109) ; Gray on Com. by Tel., §§ 74, 75.

Having reached the conclusion, as above stated, that the present action is *ex contractu,* it becomes necessary to consider whether the evidence discloses such a relation between the telegraph company and the sendee of the message as gives a right of action in the latter.

The tendency of the evidence introduced on the trial is, that at the time the message was delivered to the telegraph company at Mobile, one McLean was a member of the general council of the City of Mobile, and chairman of a committee having in charge the paving of a certain street; that the plaintiff, who was then in Montgomery, was a civil engineer, having experience in superintending the laying of pavement of the kind contemplated to be laid in the city of Mobile ; that, previously to the sending of the telegram, McLean, representing the city of Mobile, had had negotiations with the plaintiff looking to the employment of plaintiff to super-

vise the laying of the pavement; that they had agreed
upon the price to be paid plaintiff if his services were
needed; and that the telegram in controversy was sent
by McLean to plaintiff in pursuance of an understand-
ing had between them to the effect that McLean was to
notify plaintiff if he decided to employ him. The tele-
gram read : "If possible, come to Mobile to-night; if
not, come on next train. Wire answer.''

McLean and plaintiff both were examined as wit-
nesses on the trial. The plaintiff is silent as to whether
McLean acted as his agent in sending the telegram; and
McLean says: "Mr. Ford never appointed me his
agent," and again, in answer to another question: "I
sent the telegram to Mr. Ford himself. The telegram
was the notice of a consummation of an agreement which
I had made with him to send him a telegram if I de-
cided to employ him. I sent the telegram to him for
his benefit and for the benefit of the city of Mobile who
had authorized me to employ a competent man.'' In
answer to another interrogatory he says: "When I re-
turned to Mobile, I decided to employ Mr. Ford, and
wired him."

We find here an express negation that plaintiff ever
employed McLean as his agent; and the relation of
principal and agent does not spring, as a matter of law,
from the facts stated. McLean was acting for the city
of Mobile, not for the plaintiff, both in his efforts to em-
ploy plaintiff, and in sending the telegram; his purpose
was to secure the services of the plaintiff for the city of
Mobile, and, in effectuating this purpose, he sent the
telegram. While the language used by him in express-
ing the reason for sending the telegram is somewhat
obscure, it is manifest, especially when construed in the
light of the other evidence, that his meaning is, that he
had told plaintiff, in their previous negotiations, that if
the city gave him the employment, he would wire him,
and, in pursuance of this promise he sent the telegram.
Bearing in mind that McLean was still the representa-
tive of the city of Mobile, the telegram was merely the
giving of notice by one party to a negotiation to the
other that the contract which had been the subject of
the negotiation would be made. If McLean had been
acting for himself, instead of the city of Mobile, it is
clear he could not have been, in any sense, considered

the agent of plaintiff in sending the message. The mere fact that he was acting as the agent or representative of the city can not change his relation to the plaintiff.

True, McLean testified that he sent the telegram to plaintiff for his benefit, and for the benefit of the city of Mobile; but, in the first place, the witness merely testifies to a conclusion of law, and in the second place, it is manifest from his whole testimony, that the benefit to the plaintiff contemplated by the witness was wholly secondary and incidental to the benefit he intended, when he sent the message, the city of Mobile, his principal, should receive from the services of plaintiff.

The mere fact that the contract, if made, and, therefore, the telegram would have resulted in benefit to plaintiff, in that it would have yielded him lucrative employment, neither makes him a party or privy to the agreement made with the defendant for the transmission and delivery of the telegram, nor gives him such an interest therein as would justify a recovery in this case.

Discussing the right of the sender to sue in such cases, Gray in his work on Com. by Tel. section 67, says: "It is clear that the mere fact that a third person will be benefitted by the performance of a contract gives him, irrespective of the degree that he will be benefitted by it, no right to sue for a breach of that contract. To give him the right to sue for a breach of contract, the contract itself must be made for his benefit. The difference between two such contracts is the difference in the motives of their formation. The motive for the formation of one contract is the benefit which the party to the contract will derive from the performance of that contract. The motive for the formation of the other is the benefit which the third person will derive from the performance of that contract. The benefit to the third person is the incidental consequence of one contract; it is the cause of the other." Again in the same section it is said: "It may be hazarded that the right of the person to whom a message is directed to sue as beneficiary for a breach of the contract to communicate that message—a contract to which he is not a party—will, when it is admitted at all, be restricted to the comparatively small class of cases in which a person who employs a telegraph company to communicate a message does so solely to benefit the person to whom the message is di-

rected ; for when the person who employs a telegraph company to communicate a message does so to benefit himself, there is no ground for the imputation that he intends to part with his right of action for a breach of the contract."—*Western Un. Tel. Co. v. Du Bois*, 128 Ill. 248, (15 Am. St. Rep. 109).

The testimony failing to sustain this essential averment of the complaint, the court below should have given the general charge requested by the defendant.

This conclusion renders it unnecessary, to consider the other questions raised by the assignments of error.

Reversed and remanded.