82 733
87 659

POSTAL TELEGRAPH & CABLE COMPANY *v.* WILLIAM L. WELLS.

1. TELEGRAPH COMPANY. *Error in message. Tort. Sendee's right.*

    If a telegraph company receive in another state a message for transmission and delivery to the sendee in this state, and negligently deliver him a different message, to his damage, it will be liable to him in tort therefor.

2. SAME. *Stipulations on back of message. Limiting liability. Constitution 1890, § 195.*

    A stipulation on the back of a telegraph message to the effect that the company will not be liable, beyond the charge paid for the transmission, for mistakes in unrepeated messages or errors in transmitting cipher messages, is unavailing as a defense, under Constitution 1890, sec. 195, declaring telegraph companies common carriers in their line of business and subject to liability as such.

3. SAME. *Message received in one state. Delivery in another. Contract. Conflict of laws. Statutes. Common law.*

    The rule that the validity of a contract made in one state, for the transmission and delivery of a dispatch in another, is to be determined by the statutes of the state where made, has no application when the common law governs the subject in the state where the contract was made. *Shaw* v. *Postal, etc., Co.,* 79 Miss., 670, distinguished.

FROM the circuit court of Warren county.

HON. GEORGE ANDERSON, Judge.

Wells, appellee, was plaintiff, and the telegraph company, appellant, was defendant in the court below. From a judgment in plaintiff's favor, the defendant appealed to the supreme court. The facts are fully stated in the opinion of the court.

*Henry & Scudder,* for appellant.

Wells had no contract with the telegraph company. The contract with the telegraph company for the sending of the message, which was changed in transmission, was with Reynolds &

Company. The contractual relations existed between Reynolds & Company and the telegraph company. If Reynolds & Company sustained loss, it was their province to attempt to hold the telegraph company liable, Wells being the sendee of the telegram, and had no contract with the company and his action must sound alone in tort. But he made no contract to deliver the cotton at 8⅝ with Reynolds & Company, nor did he make a contract or agree to ship it to any one else at 5 5-9. He accepted an offer which was really made at 8½, believing that the offer was for 8⅝, therefore, he accepted an offer which was never made to him. There was no contract between Wells and Reynolds & Company at either 8¼ or 8⅝ for the cotton. There being no contract whatever, he has sustained no loss. There is nothing in the evidence to show the value of the cotton at the time of this supposed sale. The damage sustained by Wells, if any at all, must be the difference in price between what he got for his cotton, to wit, 8¼, and the value of the cotton, in the open market, at the date of the shipment.

There is no evidence in the record to show the value of the cotton at dates of shipment. The measure of damages, if any, as sustained by Wells is, therefore, the difference of 1-8 of a cent per pound on 100 bales of cotton, which amounts to $60.09, the weight of a commercial bale being 500 pounds, but this is the measure of damages only when Wells has shown that his cotton was worth 1-8 of a cent per pound, above 8½ cents per pound. This Wells has wholly failed to prove. The telegrams sent and received were in cipher, and their contents were known only to Wells and Reynolds & Company. No evidence of their contents or of their importance was called to the notice of the telegraph company. The rule as to cipher messages must therefore apply. It is decided in *Primrose* v. *Western Union Tel. Co.,* 154 U. S., 1, that telegraph companies are not common carriers, or bailees, or subject to the same liability. .

2. Carriers of goods may, by contract, restrict the sum for

which they are liable for negligence. 175 U. S., 98; 85 Fed. Rep., 986; 118 Cal., 690, 62 Minn., 294.

3. Terms on back of sending blank is held part of the contract. 7 S. Dak., 631.

4. Changing of "u" for "a" is only ordinary negligence, and sender can recover only amount paid if message is unrepeated. 103 Mich., 367.

5. Telegraph companies may stipulate against liability beyond cost on unrepeated messages. 63 Fed., 247; 103 Mich., 372; 50 Am. St. Rep., 382; 33 L. R. A., 408; 162 U. S., 663.

6. Telegraph companies may stipulate against liability for mistakes in obscure or cipher messages. *Ib.*

7. Damages for breech of contract are limited to those resulting in the usual course or which parties must have understood as likely to occur. 68 Fed., 140; 11 Col. App., 332; 53 Pac., 253; 23 Ind. App., 25.

8. Telegraph companies are liable on cipher messages of undisclosed importance only for price though known to be to sender's agent. 68 Fed. Rep., 138; 15 Tex. C. I. V. Appeals, 336; 92 Fed., 297; 72 Mo. App., 116; 42 S. C., 368; 46 Am. St. Rep., 735.

It is reasonable to require a repetition of a cipher message at a small extra cost, and the harsh penalty of heavy damages for unintentional error of the peculiar manner in which either the sender of the message or the telegraph operator who writes it out for delivery to the sendee may shape letters should not be imposed. *Shaw v. Pos. Tel. Co.,* 79 Miss., 670.

Telegraph companies are not liable for mistakes in unrepeated messages when stipulated against on blank. 190 N. Y., 231; 16 N. E., 75; 1 Metc. (Ky.), 164; 71 Am. Dec., 461.

Where blank limits liability company is not liable for error at other end of line. 13 Allen, 226; 1 Metc. (Ky.), 164; 37 Mo., 472.

*Shingleur* v. *Tel Co.,* 72 Miss., 1030, decides that sendee

cannot hold sender liable for a telegram materially changed in transmission if sender knows before he delivers cotton of error he may refuse delivery. If, however, he makes delivery seeking to hold up his business credit he cannot recover of telegraph company for his loss. *Shaw* v. *Postal Tel. Co.,* 79 Miss., 670, holds the validity of a contract is governed by law of state from which sent if message goes into another state.

*Smith, Hirsh & Landau,* for appellee.

Reynolds & Company were the agents of Wells; the contract made with the telegraph company was Wells' contract and not Reynolds' contract, and, moreover, if Wells sustained any damage as sendee of the message, he is entitled to recover. *W. U. Tel Co.* v. *Allen,* 66 Miss., 549.

At the time this suit was instituted, the question whether or not a telegraph company was liable on an unrepeated cipher message was an open one in this state, and some courts had taken the view that they were and others that they were not; since that time this court has adopted the view that they are liable. See *Shingleur* v. *Tel. Co.,* 72 Miss., 1030.

We quote from the dissenting opinion of Judge Whitfield in *Shaw* v. *Cable Co.,* 79 Miss., 696, as follows:

"It (*Shingleur* v. *Telegraph Co.*), also distinctly holds that the telegraph company is liable in case of a cipher message, and cannot make a valid rule exempting itself from liability in case of unrepeated message. These views are reaffirmed."

The *Shingleur Case* distinctly holds that Shingleur would have been entitled to recover had it not been for his admission that he was not bound to deliver the cotton, and, further, that he delivered the cotton notwithstanding this, and after he found out the mistake.

*Shaw* v. *Cable Company,* 79 Miss., 570, distinctly places the doctrine that is announced on the statute of the state of Massachusetts, and as there is no such statute in Rhode Island, the doctrine invoked is not applicable. This court has held that

telegraph companies are liable for mistakes in transmission of cipher messages under the common law.

TRULY, J., delivered the opinion of the court.

On the 15th day of October, 1892, appellee, under the style of W. L. Wells & Co., was engaged in the cotton brokerage business in the city of Vicksburg, this state. He had representatives and sales agents in various places, who would obtain offers for cotton from spinners and cotton mills, and transmit the same to appellee; and, upon acceptance of offer by appellee, the said representative and sales agent would close the trade at the price and for the number of bales agreed on. Among other representatives, appellee had employed F. W. Reynolds & Co., of Providence, R. I. On said date (15th October) Reynolds & Co. sent appellee a cipher telegram, stating an offer received by them for 1,000 bales of cotton at $8\frac{1}{2}$ cents per pound; the price being signified by the cipher word "alike." By the negligence of the employee of appellant, the word signifying the price was erroneously transcribed "alive," which word, in the cipher code in use, meant $8\frac{5}{8}$ cents per pound, so that the offer, as it reached appellee, was for 1,000 bales of cotton at $8\frac{5}{8}$ cents per pound. Appellee accepted the offer as it reached him, to the extent of 500 bales, and so wired his sales agents, Reynolds & Co. Immediately upon receipt of the acceptance of the offer by appellee, Reynolds & Co. closed the trade with the purchaser, and executed a sale note for 500 bales at $8\frac{1}{2}$ cents per pound, being the figure at which they had transmitted the offer to appellee; both Wells and Reynolds being ignorant of the error committed by the telegraph company in transcribing the message. Subsequently the error was discovered, through the refusal of the purchaser to pay more than $8\frac{1}{2}$ cents per pound, the price at which the sale had been consummated. Thereupon W. L. Wells filed his claim in writing within 60 days, and, this not being paid, brought suit against the Postal Telegraph and Cable Com-

pany for $304.89, being one-eigth cent per pound on 500 bales; charging that this damage was caused by the negligence of the telegraph company in erroneously transcribing the message from Reynolds & Co. Defendant pleaded the general issue, and gave notice that at the trial it would offer evidence to prove that it was not liable in damages, because of the conditions upon which the message had been sent, as printed upon the blanks used by the defendant company, by which the telegraph company undertook to limit its liability in case of mistake in the transmission of any "unrepeated messages" to the amount paid for its sending, or "for errors in cipher or obscure messages." Upon the trial an "agreed statement of facts" was filed, in which the facts herein stated were recited. It was further agreed that the message in question was sent upon one of the blanks containing the stipulations of nonliability; that it was an unrepeated message; that it was in cipher, and its meaning known only to plaintiff, Wells, and his agents, Reynolds & Co. Said agreed statement further recited "(5) that, at the time plaintiff discovered the fact that a mistake had been made in the telegram, he had shipped 250 bales of cotton, in compliance with said contract," and "(8) if the court shall be of the opinion that the plaintiff is entitled to recover, then judgment is to be rendered in favor of plaintiff for $304.89, with the interest from October 15, 1892, and all costs." The only other testimony was the deposition of Reynolds, showing the telegram as originally sent, and proving the sale and execution of the sale note at 8½ cents per pound. Judgment was rendered by the court in favor of plaintiff, and the Postal Telegraph & Cable Company appeals.

Admitting the error in the transmission and transcribing of the message in question, counsel for appellant contend that in the instant case the telegraph company is not liable:

1. Because this message was sent from the state of Rhode Island into this state, and therefore the law of Rhode Island

governs, and appellee must be defeated of his recovery under the rule announced in *Shaw* v. *Cable Co.,* 79 Miss., 670, 31 South., 222, 56 L. R. A., 486, 89 Am. St. Rep., 666. Upon consideration, this argument will be found manifestly unsound. This case is easily differentiated from the *Shaw Case.* In that case (also involving a cipher message) the decision of the court is expressly founded upon a statute of Massachusetts allowing telegraph companies to affix certain "regulations" to their handling of telegrams. Rhode Island has no such statute, and the *Shaw Case* recognizes the common-law rule of liability in the absence of statute expressly abrogating it. Again, in this case Wells was the sendee of the message, and is suing, not on contract, but in tort, for damages caused by the delivery to him of a telegram erroneously and negligently transcribed. The duty of the telegraph company, and the rights of the sendee of a telegram, and the sound reasons supporting those rights, are forcibly, clearly, and unanswerably stated by Cooper, J., in the case of *Telegraph Co.* v. *Allen,* 66 Miss., 549, 6 South., 461. Under the facts presented by this record, this is a suit for a tort committed in Mississippi, and is properly brought in a Mississippi court.

2. It is also contended that the telegraph company cannot be held in damages, because of the stipulations on the back of the message, constituting the conditions under which the message was received by the company. The stipulations to which reference is mainly had are that the company is not liable, beyond toll paid it, for mistakes in unrepeated messages, and is not liable in any case for errors in transmitting cipher messages; it being shown that the message under consideration herein is both an "unrepeated" and a "cipher" message. It is undoubtedly true, as shown by the long list of authorities cited in brief for appellant, that the courts of several states have held that telegraph companies might limit their liabilities and restrict the sum for which they would be liable for their own negligence.

In the decision of this question, of such importance as the relative rights of the telegraph companies, on the one hand, and of the business world, upon the other, while giving due consideration to the decisions of other tribunals, we must look to our own court, and, in the absence of express declaration by it, solve the question in the light of our own public policy, and announce such rule as will, under the law, best conserve the rights of all concerned. Today many of the more important business transactions of the world depend for their successful consummation upon the accuracy and promptness with which the telegraph companies transmit and deliver the messages delivered to them —upon the fidelity with which they discharge the duties to the public imposed upon them by the law. It is of the utmost importance, therefore, that there should be a clear and definite understanding of the relative duties, rights, and remedies. Prior to the passage of our present constitution, in 1890, the question of the power of the telegraph companies to limit their liability for their own negligence was in doubt to this extent at least: Our supreme court had never definitely decided this precise point. The *Alexander Case*, 66 Miss., 161, 5 South., 397, 3 L. R. A., 71, 14 Am. St. Rep., 556, had, by implication, necessarily negatived this contention, for, if the company could have availed itself of this stipulation, the plaintiff would have had no legal cause of action. But the adoption of section 195, Const. 1890, in our judgment, removes all doubt as to what the true rule is in Mississippi. Section 195 declares that "telegraph companies are common carriers in their respective lines of business, and subject to liabilities as such." As common carriers, under the common law, any stipulation to exempt themselves from liability for their own negligence would be void, and the supreme court of this state has always held that no common carrier can restrict by contract the consequence of its own wrongdoing; the rule being based upon the sound reason that, as common carriers, dealing with the public, they are charged with certain

duties to the public, which they cannot violate without being liable to respond in a full measure of damages therefor. Public policy, the safety of those with whom they deal, the protection of the property rights of the public, all require a degree of liability commensurate with the magnitude of the public interests involved. The stipulations of the telegraph company here under consideration are simply an effort to contract for protection against the effect of its own wrongdoing—an attempt to limit its liability for its own negligence—and, as such, are invalid, as being opposed to public policy. The fact that the telegram in question was a cipher message cannot vary the rule above stated. This very point was necessarily involved in the decision of this court in the case of *Shingleur* v. *Telegraph Co.*, 72 Miss., 1030, 18 South., 425, 30 L. R. A., 444, 48 Am. St. Rep., 604. In that case, as in this, the negligence was in erroneously transcribing a "cipher message," and the general rule of the liability of the telegraph company was recognized and upheld, but recovery was denied because plaintiff had no right of action under the proven facts. That case rightly decided that, when one on whom no legal liability is imposed recognizes a moral obligation, and voluntarily discharges it, he cannot, by so doing, impose a legal liability upon another. Says the court in the *Shingleur Case*: "Shingleur had shipped no goods, had incurred no liability." In the instant case the agreed statement shows that 250 bales had been shipped before the discovery of the mistake. This, under the true interpretation of the *Shingleur Case,* is decisive of the right of plaintiff to recover something, and the amount of recovery was as fixed by agreement of parties.

*The judgment is affirmed.*

After the delivery of the foregoing opinion, *Frank Johnston* and *J. R. McIntosh,* for appellant, filed a suggestion of error, making the following points:

The opinion in this case states, "This case is easily differen-tiated from the *Shaw Case*. In that case (also involving a cipher message) the decision of the court is expressly founded upon a statute of Massachusetts allowing telegraph companies to affix certain "regulations" to their handling of telegrams. Rhode Island has no such statute, and the *Shaw Case* recog-nizes the common-law rule of liability in the absence of statute expressly abrogating it." The court falls into an error. It is not because the statute of Massachusetts allows it, that the con-tract is valid. The state of Massachusetts cannot prevent the telegraph company from making the contract on interstate com-merce. This precise point has been decided by the supreme court of the United States. "It is of course elementary that where the object of a contract is the transportation of articles of commerce from one state to another, no power is left in the states to burden or forbid it; but this does not imply that, be-cause such want of power obtains, there is also no authority on the part of the several states to create rules of evidence govern-ing the form in which such contracts when entered into within their borders may be made, at least, until Congress by general legislation, has undertaken to govern the subject." *R. & A. Railroad Co.* v. *Patterson Co.*, 169 U. S., 314. This rings clear. *Missouri Pac. Ry. Co.* v. *Sherwood*, 19 S. W. Rep., 455; *Galveston, H. & S. R. Co.* v. *Armstrong*, 43 S. W. Rep., 614; *Primrose* v. *W. U. Tel. Co.*, 154 U. S., 1 Miller on the Constitution, 481; *Wabash, St. L., etc., R. Co.* v. *Illinois*, 118 U. S., 557; *Hall* v. *DeCuir*, 95 U. S., 485; *Hart* v. *Penn. R. Co.*, 112 U. S., 331; *M. K. & T. R. Co.* v. *McCann*, 174 U. S., 586; *M. K. & T. R. Co.* v. *Elliott*, 184 U. S., 534.

The court states that Wells is suing in tort. There was no tort committed by the telegraph company.

The telegraph company did all that it promised and agreed to do. The parties to the contract in their argument shut out

errors in cipher messages as constituting a breach of the contract.

If any tort was committed upon Wells, it was by the sender of the message, in using the method of transportation he did, in not having his telegram repeated, in writing his message in cipher, and in entering into the agreement he did, providing against liability for error in cipher messages. The telegraph company acted as the sender's agent, and did all that the two agreed upon, and the tort, if any, must have been that of the telegraph company's principal.

This court is in error in applying the Mississippi Constitution as to common carriers in this case. The section of the Mississippi Constitution which declares that "telegraph companies are common carriers in their respective lines of business, and subject to liabilities as such" is invalid as to interstate commerce, because it is in conflict with the provision of the constitution of the United States, which gives to congress the power to regulate interstate commerce "in so far as any provisions of a state constitution conflicts with the United States Constitution it is invalid." Joyce on Electric Law, sec. 141; *New Orleans Gas Light Co.* v. *Louisiana etc. Co.,* 115 U. S., 672; *Dodge* v. *Woolsey,* 18 How. (U. S.), 331; Miller on Constitution, 643; *Head Money Cases,* 112 U. S., 580; *Wabash etc.* v. *Illinois,* 118 U. S., 557; *Primrose* v. *W. U. Tel. Co.,* 154 U. S., 1.

This court is in error as to all three propositions:

1. That the state of Rhode Island has to "allow" the telegraph companies by statute to make the contract on interstate messages to validate it.

2. That the telegraph company is liable in tort.

3. That the Mississippi Constitution applies.

*[The suggestion of error was overruled.]*