# Western Union Telegraph Co. v. Crawford.

*Action against Telegraph Company for Negligent Transmission of Message.*

1. *Pleading and practice; rulings on pleadings can not be reviewed unless the pleadings are set out.*—The rulings of the trial court upon demurrers refiled to amended pleadings can not be reviewed on appeal where the record sets out only one copy of the pleadings, and fails to show whether such copy was of the original or amended pleadings.

2. *Action against telegraph company for negligent transmission of message; when sum sued for can not be recovered.*—In an action against a telegraph company to recover damages for the negligent transmission of a message, the complaint, in terms, claimed $500 damages, but it was specifically averred therein that the loss to the plaintiff, because of defendant's negligence was 27–14 of a cent per pound on a sale of 72 bales of cotton, being about 33,000 pounds, and it was further declared by the averments of the complaint that the amount really intended to be claimed was the difference between the sum for which the cotton was sold at 7 1–8 cents per pound, and the sum it would have brought at 7 80–100 cents per pound, with interest, if the defendant had not wrongly transmitted the message. It was shown that the message to the plaintiff from his agent was so changed in its transmission by the defendant, as to make it read that he could get 7 80–100 cents per pound for plaintiff's cotton which was stored in a warehouse, instead of 7 1–8 cents per pound, as it was originally written and delivered to defendant, and that plaintiff, upon receipt of such message, ordered his cotton sold, and it was immediately sold for 7 1–8 cents per pound. It was further shown by the evidence that the cotton would have had to be stored and insured for some time after the sale was actually made before it could have been sold for 7 80–100 cents per pound. *Held:* that the plaintiff could not recover the "sum sued for," and it was error for the court to so instruct the jury on any hypothesis of the evidence.

3. *Telegraph companies; can not limit liability by requiring message to be repeated.*—Telegraph companies can not, by conditions expressed in the printed blanks on which messages are required to be written, limit their liability in the case of unrepeated messages; and such conditions do not exempt a company from liability for the negligence of its agents in incorrectly transmitting messages.

4. *Same; measure of damages for negligent transmission of message.*—Where the owner of a certain quantity of cotton has it stored with a

[Western Union Telegraph Co. v. Crawford.]

factor in a distant city with instructions not to sell for less than a certain price, and said factor delivers a message to a telegraph company, directed to his principal, in which he states that he could sell at a price less than that at which he was instructed to sell, and the company incorrectly transmits the message so as to make it read that the cotton could be sold at the price designated by the owner, whereupon the principal directs the factor to sell and he sells at the lesser price, and the market price of cotton shortly afterwards reaches the price designated by the owner as the one at which he wanted to sell, the measure of damages for the company's negligence in the transmission of said message is the difference between the amount realized from the sale at the price it was sold and that which could have been realized from a sale after the rise in the market price, less the increased expenses to which the owner would have been put by holding the cotton in the meantime.

5. *Same; person damaged by negligence in transmission of message under no duty to recoup his loss by subsequent purchase.*—Where a person sustains a loss in being induced to sell his property at a price less than he intended to sell, by reason of the negligence of a telegraph company in incorrectly transmitting a message containing an offer of purchase, so as to make the price offered that at which he was willing to sell, such person is under no duty to recoup the damages he sustained through the company's negligence by buying property of like character at the price he sold, when he discovered the mistake, and holding it for an advance in price; and the fact that he did not so purchase other like property and that there was an advance in the market value up to the price at which he wished to sell, will not affect his right to recover the full loss sustained by selling at the reduced price.

APPEAL from the Circuit Court of Henry.

Tried before the Hon. JOHN R. TYSON.

The action in this case was brought by the appellee against the appellant.

The complaint as contained in the transcript was as follows: "The plaintiff claims of the defendant five hundred dollars damages for the breach of a contract made by plaintiff through its agents, Thomas Henry & Sons, of Philadelphia, Penn., and the defendant on the 9th day of July, 1892, by the terms of which the defendant undertook to transmit from Philadelphia, Penn., to Dothan, Alabama, the following message, towit: 'July 9th, 1892. To J. R. Crawford, Dothan Alabama: Best offer we can get on your cotton is seven and eighth, shall we sell, answer quick. Thomas Henry & Sons.' And plaintiff avers that at the time of making said contract

the defendants were engaged in the business of receiving and transmitting telegraphic messages for hire, and that said Thomas Henry & Sons were his agents and had in their possession seventy-two (72) bales of cotton for the purpose of selling the same, and that he paid the defendant the charges for sending said message from Philadelphia, Penn., to Dothan, Alabama, and he avers that said contract was broken by the defendant in this, that it failed to deliver at Dothan, Alabama, said message to plaintiff, as it was received; that the word 'eighth' that was in the message when received by the defendant had been changed to eighty at the time it was delivered by plaintiff at Dothan, Ala., and that said change was made by defendant. Plaintiff avers that on receipt of said message by him at Dothan, Ala., he wired his agent Thomas Henry & Sons to sell said cotton, which they did at the price of seven and one-eighth cent per pound, and by said sale he sustained a loss of twenty-seven fourteenths (27–14) of a cent per pound on said cotton. He avers that he could have sold said cotton at the price of seven and eighty-100 cents per pound, the price named in said message, after receiving said telegram and bringing this suit. All to the damage of the plaintiff as aforesaid."

The defendant pleaded, first, the general issue, and the following special pleas: "2d. That the said telegram, as delivered to the defendant was obscure and misleading to the defendant's agents, and thereby caused the mistake complained of. 3d. That if the plaintiff was damaged in any amount by the mistake in transmitting said telegram, that he had abundant opportunity to repurchase the same amount of cotton at the same price in the city of Philadelphia, as that at which he sold, and thereby protect himself from loss, and that he failed so to do. 4th. That the change of the word 'eighth' in said telegram to eighty was a mistake and not intentional, and arose from the similarity of the telegraphic symbol of the letter 'H' and the letter 'Y'; and that a part of said contract between plaintiff and defendant for the transmission of said message was as follows: 'To guard against mistakes or delays, the sender of a message should order it repeated; that is telegraphed back to the originating office for comparison. For this one-half the regular rate is charged

in addition. It is agreed between the sender of the following message and this company that said company shall not be liable for mistakes or delays in the transmission or delivery or for non-delivery of any unrepeated message beyond the amount received for sending the same;' and defendant avers that said alleged message was an unrepeated message, and that it is not liable in this case in any event for more than the amount received for sending or transmitting the same."

There were demurrers to the complaint and to the several special pleas of the defendant, but the opinion renders it unnecessary to set these out in detail.

On the trial of the cause, as is shown by the bill of exceptions, the plaintiff introduced the original telegram upon which the suit was based, and which was written upon the regular blank form used by the defendant, and which was as follows: "July 9th, 1892. To J. R. Crawford, Dothan, Ala. Best offer we can get on your cotton is seven and eighth, shall we sell, answer quick. Thomas Henry & Sons." On the back of the telegram was the indorsement, that "All messages taken by this company are subject to the following terms;" following which statement was the stipulation copied in the fourth plea as above set out.

The plaintiff, as a witness in his own behalf, testified that he owned 72 bales of cotton in the hands of Thomas Henry & Sons, amounting to 33,000 pounds, which cotton he had placed under the management of Thomas Henry & Sons as his agents with instructions not to sell for less than eight cents; and that on July 9th, 1892, he received a telegram, which was delivered to him by the defendant's agent in Dothan, Ala., and which read as follows: "J. R. Crawford, Dothan, Ala. Best offer we can get on your cotton is seven and eighty, shall we sell, answer quick. Thomas Henry & Sons." On the receipt of this telegram he authorized Thomas Henry & Sons to sell his cotton, and that in obedience to this direction, Thomas Henry & Sons sold the cotton at $7\frac{1}{2}$ cents per pound, but that during the month of August following the receipt of the telegram, cotton went up to 8 cents per pound.

On cross-examination the plaintiff testified that he took no steps towards re-purchasing cotton; did not know whether he could have bought the same amount

of cotton at the price for which he sold it in the market at Philadelphia at any time after the sale or not. It was shown by the evidence that the change of the letter "h" at the end of the word eighth in the original telegram to the letter "y" occurred somewhere on the defendant's line before the same was delivered to the line which transmitted the message to Dothan.

The evidence for the defendant tended to show that the change in the letter was an accident, and occured by reason of the similarity of the telegraphic signs which indicated the letter "h" and the letter "y", which accident could easily happen.

Upon the introduction of the evidence, the court gave to the jury at the request of the plaintiff, the following charges : (1.) "If the jury believe from the evidence that the mistake in the telegram from Thomas Henry & Sons to J. R. Crawford was made through negligence on the part of the defendant, or any of its agents, then the defendant can not avoid liability in this case on account of such mistake." (3.) "If the jury believe from the evidence that J. R. Crawford had 72 bales of cotton in the hands of Thomas Henry & Sons of Philadelphia, and that they were the agents of J. R. Crawford, and that the Western Union Telegraph Company negligently made the error in the telegram transmitted by defendant on the 9th day of July, 1892, and that by reason of said error in said telegram J. R. Crawford sustained the loss complained of, then the jury must find for the plaintiff in the sum sued for, unless the defendant has shown that plaintiff could have bought the same grade of cotton at 7⅛ cents per pound in Philadelphia." The defendant separately excepted to the giving of each of these charges, and also separately excepted to the court's refusal to give each of the following charges requested by it : (2.) "If the jury believe the evidence in this case, they must find for the defendant." (3.) "If the jury believe the evidence, they can not give the plaintiff a judgment for more than the amount paid defendant for transmitting said message."

There were verdict and judgment for the plaintiff, assessing his damages at $260.89. The defendant appeals, and assigns as error the several rulings of the court to which exceptions were reserved.

RAY RUSHTON, for appellant.—1. Plaintiff did not show that he was damaged in any amount. The mere statement that "cotton went up to eight cents a po nd about the last of August," is not proof that plaintiff would have held his cotton till then, or that if he had held it until then that he would hav sold it at this price, or that the expenses by way of torage, insurance and the like would not have eaten up all the difference in price. He might have held it until cotton went down to a price below that which he got for it. Nor was there any evidence that plaintiff would not have sold his cotton at seven and one-eighth cents per pound had there been no mistake in the transmission of the telegram.—*Baldwin v. U. S. Tel. Co.*, 45 N. Y. 744, 6 Amer. Rep. 165; *Acheson v. W. U. T. Co.*, 96 Cal. 641.

2. The wording of the telegram was misleading. The plaintiff admitted in his testimony that the message as sent was not couched in the language usually used by cotton men, and also that the message as received by him at Dothan was unusual. The negligence of the plaintiff's agents in sending the message "seven and eighty" and the negligence of the plaintiff himself in acting on a message w itten "seven and eighty" must have contributed to the loss complained of. Plaintiff could have had the message repeated with little expense and trouble and thereby avoided loss.—*Koons v. W. U. T. Co.*, 102 Pa. St. 164; *W. U. T. Co. v. Liddell*, 68 Miss. 1.

3. The plaintiff took no steps to save himself from loss. He quietly sat down and did nothing until cotton went up and then sued defendant for alleged damages. The market reports introduced by the defendant showed that the same amount of cotton could have been bought at Philadelphia at any time after plaintiff sold his cotton until he filed his claim with the company foi damages at the same price. Or at least, they show that the prices of cotton remained unchanged, and whether he could have gotten exactly the same grade of cotton or not, he could at least, have invested the same amount in cotton, and could have thereb/ taken advantage of any rise in the market. It must be presumed that the plaintiff was perfectly satisfied with his sale of the cotton and preferred to let the cotton go at that price, and keep the money rather than risk the money in a re-investment. We do not think the court will allow him to take the

money invested in the cotton out of the cotton, put it in his pocket and then speculate on the defendant and hold it responsible for a rise in cotton at a time long after he had "gotten out of the market."—*W. U. T. Co.v. Way*, 83 Ala. 542; *True v. Internat. Tel. Co.*, 60 Me. 99, 11 Amer. Rep. 156; *Squire v. R. R. Co.*, 98 Mass. 239, 93 Amer. Dec. 162; *U. S. Tel. Co. v. Wenger*, 55 Pa. St. 262, 93 Amer. Dec. 751; *Turner v Hawkeye Tel. Co.*, 41 Iowa, 458, 20 Amer. Rep. 605; *Gulf &c. R. R. Co. v. Loonie*, 82 Tex. 323; *Western U. Tel. Co. v. Harris*, 19 Ill. App. 347; *Marr v. W. U. T. Co.*, 16 A. & E. Corp. Cases, 243.

T. M. ESPY, *contra*.

McCLELLAN, J.—It does not appear whether the only complaint set out in the transcript is the original or the amended complaint. The judgment entry shows that the defendant's demurrers to the original complaint were sustained, and being refiled to the amended complaint, were overruled. If the complaint in the record is the original, we do not know what the amended complaint averred; and not being informed whether it is the former or latter, we cannot review the action of the trial court in overruling the refiled demurrers. For like reasons we are unable to review the court's action in sustaining the demurrer to plea No. 3 as originally drawn and as it stood upon the first amendment: the record does not show with any certainty what said plea was originally or as first amended.

The complaint in terms claims five hundred dollars damages, but it specifically avers that the loss to the plaintiff, because of defendant's negligence, was twenty-seven-fourteenths (27–14) of a cent—or nearly two cents—per pound on a sale of seventy-two bales, being about 33,000 pounds, of cotton, but it goes on further to show that the amount really intended to be claimed is the difference between the sum for which the cotton was sold at seven and an eighth cents per pound, and the sum it would have fetched at seven and eighty-one-hundredths (7.80) cents per pound, with interest &c. Assuming that plaintiff was entitled to recover at all, neither one of these bases furnish the proper measure of his damages under the evidence. The last stated is the

nearest to the true measure, but that is inaccurate in that to have sold the cotton for 7.80c it would have been necessary to have kept it stored in Philadelphia and insured for a considerable time after the sale which was made, and the storage charges and insurance premiums would have had to be deducted from the sum representing the difference between the amount realized from the sale at 7⅛ and that which would have been realized from a later sale at 7.80c. So that upon no construction of the complaint and upon no hypothesis of evidence was the plaintiff entitled to recover "the sum sued for," as the court declared he was on the facts hypothesized in the 3d charge given at his instance. For the error in giving this instruction, the judgment will be reversed.

Without referring in detail to the other points reserved, we deem it proper to observe for the purposes of another trial: 1. That the defendant's liability does not at all depend on whether the message, which was incorrectly transmitted, was repeated or not.—*Daughtery v. W. U. Tel. Co.*, 89 Ala. 191. 2. That if the jury should find from the evidence that the plaintiff had stored the cotton in question with factors in Philadelphia for the purpose of keeping it until he could sell for seven and eighty-one-hundredths cents, or more per pound, and had made arrangements and given instructions to that end, and further, that within a reasonable time—a month or six weeks say—after the cotton had been sold by the factors at 7⅛ cents, in consequence of defendant having failed to correctly transmit the factors' telegram to the plaintiff, it could have been sold for 7 4-5 cents or more per pound, they should return a verdict for this difference with interest less the increased expenses to which plaintiff would have been put by holding the cotton meantime—*Pepper v. W. U. Tel. Co.*, 10 Am. St. 699. And 3, that the plaintiff was under no duty or obligation to recoup the damages he had sustained through defendant's negligence by buying other cotton when he was informed of the sale, and holding it for an advance in price — *Western Union Telegraph Co. v. Stevens*, 16 S. W. Rep. 1095.

The judgment of the circuit court is reversed. The cause will be remanded.

Reversed and remanded.