[Chandler & Jones v. Crossland *et al.*]

# Chandler & Jones *v.* Crossland *et al.*

## *Action of Detinue.*

1. *Submission of cause to court without jury; review of judgment upon appeal.*—When a cause is, by agreement of the parties submitted to the decision of a trial court without a jury, and a special finding of the facts is requested, as provided under the statute, (Code, §§ 3319-3321), on an appeal from a judgment rendered upon such special finding, the appellate court will not examine into the extrinsic facts, to see whether or not from the evidence introduced the facts were correctly found by the court: but in reviewing such judgment, the appellate court will be confined to determining whether or not, upon the facts found and set forth in the special finding, the trial court rendered the proper judgment.

APPEAL from the City Court of Montgomery.

Tried before the Hon. A. D. SAYRE.

This was an action of detinue brought by the appellees, Nannie S. Crossland and W. A. Crossland, against "Willis L. Chandler and T. L. Jones, partners in trade under the name of Chandler & Jones," and sought to recover specifically described articles of jewelry, watches, diamonds, silver and plated ware.

The cause was tried by the court without the intervention of a jury under an agreement between the parties in writing, without a trial by jury, and requested a special finding of the facts: Upon the introduction of all the evidence, the court reduced his special finding to writing, which was in words and figures as follows: "The court finds that the plaintiffs, W .A. and Nannie S. Crossland, are, and have been since prior to 1892, husband and wife; that Nannie S. Crossland, the wife, was the owner of some property, and W. A. Crossland, the husband, without any specific agreement to that end, attended to it for her; that about November, 1892, W. A. Crossland was appointed administrator, by the

[Chandler & Jones v. Crossland *et al.*]

Probate Court of Dallas county, Ala., of the estate of Rebecca E. Smith, deceased, the said Nannie S. being interested in said estate as one of the heirs thereof; that defendants became sureties upon the bond of said Crossland as said administrator, under a written agreement between defendants and said W. A. Crossland, to the effect that Crossland, as said administrator, should deposit the funds of said estate with defendants, as compensation to defendants for signing said bond; that afterwards the terms of said agreement, for the reason that a partial distribution of said estate had been determined upon, was changed by agreement between the parties, by the said W. A. Crossland, individually, agreeing to pay the said Chandler and Jones the sum of $300 as compensation for becoming his sureties on said bond, in lieu of the first agreement.

"That said W. A. Crossland, while he was such administrator, deposited with said defendants, Chandler & Jones, who were then engaged in a general banking business, and to his credit as administrator, some of the money belonging to said estate, and subject to his checks; that about the 3d day of May, 1898, the said administrator made a settlement of said estate, and the interest of said Nannie S. Crossland therein was decreed to be, towit, $1,757.30; but she had previously, (in 1892) received on her share of said estate, $1,200, so that there was actually due her at the time of this settlement, $557.30; that on the making of this settlement, said administrator exhibited his wife's receipt purporting to be in full of her interest in said estate, and he received credit on his account therefor, but that he had only paid her the amount of $1,200 and he then owed her a balance of $557.30, which last named sum was then on deposit to the credit of his account, as administrator, with defendants, and the money of said estate, and left there for the purpose of paying his said wife, after having paid the expenses of said administration and the amount due the other heirs, and he gave his wife his check, as such administrator, on defendants for said sum of $557.30; the above men-

tioned receipt was given merely for the purpose of the settlement, and it was agreed between Crossland and wife at the time said receipt was given, that said administrator would give her the check on defendants, which check was given at or shortly after that time. Nannie S. Crossland endorsed said check in blank, and presented it to the defendants at or about the time it was given, viz., May 5th, 1898, with request to apply. so much thereof as was necessary to the payment of the balance due on her notes to defendants hereinafter mentioned, but defendants refused to honor said check for the reason that they claimed the right to hold the money until the said W. A. Crossland paid them a balance he owed for making his bond as administrator. Nannie S. Crossland was not a party to the agreement between W. A. Crossland and the defendants relative to the making of said bond.

"That on November 23rd, 1896, Nannie S. Crossland borrowed from the defendants the sum of $331.25, and on the day executed her promissory note to them therefor, payable one day after date, and at the same time, as collateral security to said note, the said Nannie S. Crossland transferred and conveyed to the said Chandler & Jones, eleven rent notes given to the said Nannie S. Crossland by one Johnson, for $20 each, payable monthly, commencing on the first day of November, 1896, and also conveyed to the said Chandler & Jones her undivided interest in the estate of said Smith, to cover whatever balance might remain unpaid of said note on any other indebtedness on her account, with them that might be due to them; said rent notes of Johnson were promptly paid by him to defendants as they matured.

"On May 18th, 1897, W. A. Crossland and Nannie S. Crossland, with others, executed to defendants their promissory note for value, in, towit, the sum of $337.10, payable on or before the 18th day of November, 1897, and at the same time, and as security to said note, pledged the property sued for, under an agreement between the plaintiffs and defendants, that upon payment

in full of said last named note, said property should be returned to the plaintiffs. About December 14th, 1896, Nannie S. Crossland made to Chandler & Jones her promissory note for $20 for value, payable January 14th, 1897, with interest from date; these notes and agreement of Nannie S. Crossland were duly assented to by her husband. The amount of said check was sufficient to pay balance on said notes.

"December 29, 1896, W. A. Crossland procured Chandler & Jones to insure the household furniture of Nannie S. at a cost to them of $12.50. February, 1895, Nannie S. borrowed from one Vinson, $2,600, and mortgaged her house and lot to secure payment. Said mortgage required the property to be kept insured by the mortgagor, and a policy was taken out at time of loan, for one year. January, 1896, W. A. Crossland directed Chandler & Jones to procure a policy on said real property, for a term of 3 years, which they did, at a cost of $60. Mrs. N. S. Crossland did not request the procurement of either the $12.50 premium or the $60 premium policy, nor did she know they were in existence until this controversy arose. She knew the requirement of the mortgage. According to the terms of the $60 premium policy, the insurance company had a right to cancel the policy at any time, returning any then unearned premium. September 10, 1898, said $60 premium policy was cancelled, then unearned premium being at the time $33. Both premiums, viz., $12.50 and $60 were charged by Chandler & Jones on their books to the account of W. A. Crossland alone, and were purchased by them on the sole expectation that W. A. Crossland would pay for them. Subsequently and after this controversy arose, Chandler & Jones charged the account on their books, without the knowledge or consent of Mrs. Crossland by adding the name of N. S. Crossland as a party debtor.

"The court finds that the indebtedness for which the articles sued for was pledged, and the other indebtedness of Mrs. Crossland to Chandler & Jones, had been paid before the suit was brought.

"The court further finds that before the bringing of this suit, and after the presentation of said check, the plaintiffs demanded possession of the property sued for, from the defendants, and they refused to surrender it; and further, that the defendants were, at the time of this suit, in the possession of said property. The court further finds the value of the property to be as fixed and stated in the judgment entry in this cause, which is hereby referred to.

"The court further sets out, as a part of its findings in this cause, a memorandum filed with the clerk at the time judgment was rendered in the case, which was intended to be a mere memorandum for the attorneys, and not as a finding of fact, required by the statute and the request of the parties, which said statement is as follows:

"Whatever authority a husband exercises as the agent of his wife must be derived from prior appointment or subsequent ratification. If a contract is made in the name of the husband, it is not the subject of ratification by the wife. If made in the name of the wife, it is indispensable to charge her by ratification that she has full knowledge of all the material facts. The same is true of estoppel.—Mechem Agency, Sections 63, 87 and 127, and 148. In this case I find that Crossland had no authority, express or implied, to charge Mrs. Crossland's interest in the Smith estate (even though the contract was for her benefit) by permitting Chandler & Jones to charge the insurance items against her, so as to bring them under the influence of the agreement of November 23, 1896. I further find that Mrs. Crossland never ratified any such act, because she had no knowledge of it until the controversy arose. For the same reason she is not estopped. I further find that the contracts of insurance were purchased by Chandler & Jones on the sole credit of Mr. Crossland, and were charged to him alone on the books, and that they can look to him alone for payment. *Wadsworth v. Hodge,* 88 Ala. 506.

"The result is that the plaintiffs must have judg-ment. I think further that the $60 policy was can-celled, and for that reason plaintiffs must recover, as well as for the reasons above stated."

Under this special finding the court rendered judg-ment in favor of the plaintiffs. From this judgment the defendants appeal, and assign as error the several rulings of the trial court upon the evidence, and the rendition of judgment in favor of the plaintiffs.

WATTS, TROY & CAFFEY, for appellants.—Under the Code there are two methods of submitting a cause to the decision of a court without a jury. If no spe-cial finding is requested, the decision of the court may be general. If a special finding is requested, "the court must state in writing the facts as it finds them." In either case, the losing party may, by bill of excep-tions, reserve any rulings of the court. If the finding is not special, it "shall have the same effect as the ver-dict of a jury." If the finding is special, "the Supreme Court must examine and *determine* whether the facts are sufficient to support the judgment." Thus there are two rules which govern in the decision of such cases on appeal. If there is no special finding, "the court cannot review the sufficiency of the evidence to support the judgment.—*Quillman v. Gurley,* 85 Ala. 594; *Calloway v. State,* 75 Ala. 37; *Bell v. State,* 75 Ala. 27.

LOMAX, CRUM & WEIL and J. M. CHILTON, *contra.* The correctness of a special finding rendered by a court can not be questioned, either in the court in which it was rendered, or in an appellate court, except on motion for a new trial. Such a finding is absolutely conclusive of the truth of the facts found.—Code, §§ 3319, 3320, 3321; *Sayre v. Weil,* 94 Ala. 466; *Bibb v. Hall,* 101 Ala. 79; *Quillman v. Gurley,* 65 Ala. 594.

HARALSON, J.—1. The cause was tried by the court without the intervention of a jury; the parties by their attorneys of record having filed an agreement

[Chandler & Jones v. Crossland *et al.*]

in writing with the clerk, waiving a jury, and request-
ing a special finding on the facts.   The judge made his
special finding, and it is set out in the transcript.   If
parties by their written agreement merely waive a jury,
it is provided by statute, "the finding of the court upon
the facts shall have the same effect as the verdict of a
jury."—Code, § 3319.

Section 3320 provides, that if a special finding is re-
quested, the court must state in writing the facts as it
finds them, and such statement, with the judgment of
the court, must be entered on the minutes.

Section 3321 provides, that either party may reserve,
by bill of exceptions, any ruling, opinion, or decision
of the court, to which an exception could have been re-
served, if a trial by jury had not been waived, and is
entitled to an appeal from the judgment of the court,
as if the judgment had been rendered on the verdict of
a jury, and if the finding is special, on appeal, the Su-
preme Court must examine and determine whether the
facts are sufficient to support the judgment.

In a case of this character, the trial being by the
court without a jury, there can be no charges excepted
to, to be set out in the bill of exceptions.   The only re-
maining office of a bill of exceptions, therefore, would
seem to be, to reserve and present for review, the rul-
ings of the court on the admission or exclusion of evi-
dence, such as, by its erroneous admission or exclusion,
the mind of the court might have been influenced in
rendering a judgment it might not otherwise have ren-
dered, thereby raising a presumption of injury to the
party excepting.—*First Nat. Bank of Talladega v. Chaf-
fin*, 118 Ala. 246.

In *Quillman v. Gurley*, 85 Ala. 594, the court said:
"If there is a special finding of facts, the Supreme
Court must on appeal, examine and determine whether
the facts are sufficient to support the judgment." This
means, certainly, the facts as found by the court. It
was further said in that case, that "The operation of
the statute being, that when the parties waive a trial
by jury, and consent that the court may be a trier of

[Chandler & Jones v. Crossland *et al.*]

the facts, there shall be the same right of appeal and reservation of questions for revision on appeal, as if there had been a trial by jury, and the judgment had been rendered on their verdict, and no other or greater, the appellate court cannot review the sufficiency of the evidence to support the judgment, except in the single instance of a special finding on the facts, entered on the minutes as provided by statute."

In *Betancourt v. Eberlin,* 71 Ala. 461, it was held that before the enactment of these statutes, if the parties waived a jury and submitted the determination of the facts to the court, the decision of the court thereon was not examinable on error. Referring to the special finding when requested by the parties or either of them, the court said: "When the finding is special, the statute operates to open for examination the sufficiency *of the facts as found* (italics ours) to support the judgment, and casts on the appellate court the duty of reviewing and examining the decision of the primary court on them. The finding in the present case was special, on the request of appellant, the defendant in the court below, and whether the facts as found, reduced to writing and entered on the minutes, will support the judgment rendered, must be inquired into and determined." It thus appears that where a special finding, as here, has been required of the court, by the parties, this court may not go behind *the facts as found by the court* to see whether or not from the evidence introduced, it correctly found the facts. If such could be done, we fail to see the necessity for a spcial finding at all. We must, therefore, determine whether the court rendered a proper judgment on the facts found. *Bibb v. Hall,* 101 Ala. 79, 87.

What was said in *Brock v. L. & N. R. R. Co.,* 122 Ala. 172, in the last paragraph of the opinion, in reference to the finding in that case, seems to be in conflict with what we have above said, and to that extent that decision is misleading.

2. We have read the facts as found by the court, and are of the opinion, after careful examination of them and the legal principles applicable thereto, that

[McKleroy v. Gadsden Land & Improvement Co.]

upon the facts alone as found, unaided by any extrinsic evidence appearing in the bill of exceptions, the court did not err in the judgment rendered, and it must, therefore, be affirmed. It would subserve no good purpose to elaborate our views, in following counsel in the many questions they so elaborately discuss.

Affirmed.