# Western Union Telegraph Company v. Anniston Cordage Company.

## Failure to Deliver Message.

(Decided June 19, 1912.  59 South. 757.)

1. *Telegraphs and Telephones; Transmission or Delivery; Negligence; Right of Addressee.*—The addressee of a telegram may maintain an action ex contractu against a telegraph company for its failure to deliver, delay in delivery, or other actionable negligence, concerning a message when such addressee is a party to the contract. He may also recover ex contractu, for failure, delay or other negligence relative to a message when he is the sole party to be benefited by the message, although not a party to the contract, if the telegraph company knows, or the message discloses, that the addressee is the party to be benefited when it receives the message for transmission.

2. *Same.*—An addressee of a telegram may maintain an action ex delicto for failure to properly transmit or deliver a message, where he is a party to the contract, or the substantial, though not sole, beneficiary to the contract, if known to the telegraph company.

3. *Same; Damages; Mental Pain.*—Unless there is a right to recover aside from mental pain and anguish, an addressee of a telegram may not recover for such pain and anguish in a special action ex delicto, for delay or for non-delivery, or for negligence in transmission or delivery of a message.

4. *Same; Business Message; Erroneous Transmission.*—The telegram as sent and as delivered stated, and it is held that the telegram showed to the telegraph company that the addressee had such an interest therein as would support a special action of trespass on the case by it against the company for such damages, as were an actual and proximate result of the error.

5. *Same; Limiting Liability.*—A telegraph company cannot exempt itself from liability resulting from the negligence of its employees in transmitting and delivering messages by stipulations on the blanks furnished for the writing of such messages whether the messages are repeated messages or not.

6. *Pleading; Complaint; Demurrer; Motion to Strike.*—Where a complaint states a cause of action for the recovery of damages, and there is combined therewith non-recoverable damages or non-recoverable elements of damages, such should be eliminated by motion to strike, by objections to evidence, or special charges, but cannot be reached by demurrer.

7. *Sales; Contract; Offer and Acceptance.*—Where a sale of yarns was negotiated by telegraph, and plaintiff was induced to accept the seller's offer by reason of mistake as to price in the offer telegram, there was not a meeting of minds, and when plaintiff discovered the mistake, it was entitled to reject the goods and buy elsewhere.

8. *Damages; Loss; Conduct.*—Where plaintiff purchased a quantity of goods relying on a telegram which, by mistake of the company, wrongfully quoted the price, and plaintiff did not learn of the mistake until after the goods had been shipped, and it was then too late to order elsewhere without shutting down the plant, plaintiff was entitled to extricate itself from the situation presented by adopting such course as under all the circumstances would entail the smallest loss; and in the absence of a showing that the course adopted was improvident or in bad faith, the burden was cast on the telegraph company making the mistake to show that the loss might have been mitigated by a different course of conduct which a reasonably prudent man ought to have adopted.

9. *Appeal and Error; Waiver.*—A failure to present on appeal questions presented by demurrer constitutes a waiver thereof.

10. *Same; Finding of Fact; Review.*—The Appellate Court will not go behind the facts specially found by a trial judge, but is only authorized to determine whether the judgment is supported by the facts so specially found.

APPEAL from Anniston City Court.

Heard before Hon. THOMAS W. COLEMAN, JR.

Action by the Anniston Cordage Company against the Western Union Telegraph Company, for damages for error in transmission and delivery of a telegram. Judgment for plaintiff and defendant appeals. Affirmed.

[Western Union Telegraph Company v. Anniston Cordage Company.]

KNOX, ACKER, DIXON & STERNE, and CAMPBELL & JOHNSTON, for appellant. The doctrine that a third party although not primarily a party to the contract, may sue for a breach, is an intrenchment upon fundamental principles and must be kept strictly within limits.—*Frazer v. W. U. T. Co.*, 2 A. & E. Ann. Cases, 396; Gray on Telegraphs, sec. 67; *Anniston C. Co. v. W. U. T. Co.*, 49 South. 770. Counsel consider the errors assigned, and in the light of these authorities, insist that the court was in error in its rulings on the pleadings and the evidence.

WILLETT & WILLETT, for appellee. This is the second appeal in this case. The former appeal settled the right of the addressee to sue.—*Anniston C. Co. v. W. U. T. Co.*, 161 Ala. 216. This case was especially commented upon and re-affirmed in the case of *W. U. T. Co. v. Jackson*, 163 Ala. 9; see also 35 L. R. A. 548; 67 L. R. A. 319; 7 Thomp. on Neg. sec. 2464. As to the measure of damages being the difference between the price quoted, and that really offered, see.—*W. U. T. Co. v. Crawford*, 110 Ala. 461; 88 Am. St. Rp. 36; 27 A. & E. Enc. of Law, 1069. The court properly sustained demurrers to plea 4.—*W. U. T. Co. v. Crawford, supra; Same v. Chamblee*, 122 Ala. 428; *So. Ex. Co. v. Owen*, 146 Ala. 412; *A. U. T. Co. v. Daugherty*, 89 Ala. 191. The court properly sustained demurrers to plea A.—*Daugherty v. A. U. T. Co.*, 75 Ala. 168; 10 Am. St. Rep. 199; 16 S. W. 1095; 35 L. R. A. 548.

DE GRAFFENRIED, J.—The value of a rule of law depends, generally speaking, as much upon its stability and known certainty as upon its wisdom. The stability of business depends upon the stability of the laws under which it is conducted, and nothing can more readily cre-

23 CA

ate unrest in the business world than the fear that the laws themselves are unstable. "The known certaintie of the law is the saftie of all."—2 Coke upon Littleton, 395a.

In some cases the facts are such that it is difficult to determine which of two well-recognized and clearly defined, although opposite, rules—the application of one of which will lead to conclusions entirely different from the conclusions which would have followed if the other rule had been adopted—shall be applied to such facts. The fact, however, that there are such border line cases in no way affects the truth of what we have above said.

We make the above observations because of the attack that is made by appellant upon some of the rules governing cases like the present, which have been definitely declared by the Supreme Court.

1: In the recent case of *Western Union Telegraph Co. v. Ella E. Brown, Infra,* 59 South. 329, we we announced, as a result of our investigations, that the Supreme Court of Alabama had declared the following rules as applicable to suits for the non-delivery, delay in delivery, or for negligence in the transmission and delivery of, telegrams:

First. That the sendee of a telegram may maintain an action ex contractu against a telegraph company for failure to deliver, or for delay or for other negligence in the transmission or delivery of, the telegram when he is a party to the contract.

Second. That the sendee of a telegram may also maintain an action ex contractu against a telegraph company for such failure, delay, or other negligence, when he is the *sole* party to be benefited by the telegram, although he is not a party to the contract, *provided* the telegraph company, when it received the telegram for transmission, *knew,* or the *telegram disclosed,*

that the sendee was the party to be benefited by the telegram.

Third. That the sendee of a telegram may maintain a special action of trespass on the case (an action ex delicto) in the above two instances, and also when he is a substantial beneficiary—not the sole beneficiary—of such telegram, and the telegraph company, when it receives the telegram for transmission, knows, or the telegram shows, that it is sent for the benefit of the sendee.

Fourth. That, in a special action of trespass on the case for delay in delivery, or for nondelivery, or for negligence in the transmission or delivery, of a telegram the sendee cannot recover for mental pain and anguish, unless there is a right of recovery aside from such injuries.—*Western Union Telgraph Co. v. Ella Brown, supra.*

The above rules were announced by the Supreme Court of Alabama in the following cases: *McGehee v. Western Union Telegraph Co.,* 169 Ala. 109, 53 South. 205, Ann. Cas. 1912B, 512; *Western Union Telegraph Co. v. Adams,* 154 Ala. 657, 46 South. 228; *Postal Telegraph Co. v. Ford,* 117 Ala. 672, 23 South. 684; *Heathcote v. Western Union Telegraph Co.,* 156 Ala. 339, 47 South. 139; *Western Union Telegraph Co. v. Blocker,* 138 Ala. 484, 35 South. 468; *Western Union Telegraph Co. v. Jackson,* 163 Ala. 9, 50 South. 316.

2. Of course, it is well known that in courts of law in England only parties to a contract can maintain an action for its breach. The English courts bluntly declare that no one not a party to the contract—not even the sole beneficiary—can maintain, in a court of *law,* an action for a breach of the contract. Hence in England the addressee of a telegram, unless the sender was actually acting as his agent when he delivered the telegram to the company, and the company undertook to

transmit it, cannot maintain an action, either ex contractu or ex delicto, against the telegraph company for a failure to delivery, delay in delivering, or other acts of negligence in the transmission or delivery of, such telegram.—*Western Union Telegraph Co. v. Brown, supra; Frazier v. Western Union Telegraph Co.*, 45 Or. 414, 78 Pac. 330, 67 L. R. A. 319, 2 Ann. Cas. 396.

3. There is, as is also well known, a wide diversity among the courts of last resort of the various states of the Union upon the above subjects.—*Western Union Telegraph Co. v. Brown, supra.* The rules which we have above announced, however, are the rules applicable to such cases which have been declared by the Supreme Court of Alabama, and the decisions of that court are binding upon us.

4. In the present case the Trio Manufacturing Company, of Forsyth, Ga., sent to the Anniston Cordage Company, at Anniston, Ala., the following telegram: "Forsyth, Ga., Oct. 2, 1906. 12 paid. Anniston Cordage Co., Anniston, Ala. Offer thirty thousand three and four ply eighths, sixteen half, quick reply. Trio Mfg. Co." By an error in transmission, the above telegram, when it was received by the Anniston Cordage Company, read "fifteen half," instead of "sixteen half." The above telegram was a quotation on yarns made by the Trio Manufacturing Company to the Anniston Cordage Company, and, acting upon the faith of the correctness of the telegram, the cordage company wired to the Trio Manufacturing Company its acceptance of the offer. When the goods were shipped, the Trio Manufacturing Company drew on the cordage company for them at $16\frac{1}{2}$ cents per pound; and when the drafts were presented to the cordage company, and that company discovered the error, it was too late for it to order the goods elsewhere, without shutting down its manu-

facturing plant. To shut down the plant until the same goods could be ordered and received from some other place would have entailed a greater loss upon the appellee than the difference between the price of the goods at 15½ cents per pound and 16½ cents per pound. The appellee therefore paid the drafts, received the goods, used them in its business, and brought this suit to recover the difference between the price of the goods at 15½ cents and 16½ cents per pound.

The telegram shows on its face that it is a business message from a manufacturing company to a business correspondent. It plainly contains an offer on the part of the sender to sell to the sendee certain goods at a fixed price. The acceptance or rejection of the offer was a matter of business importance to both parties. It shows that its prompt and proper transmission and delivery—the last words in the telegram are "quick reply," showing that the offer was for immediate acceptance or rejection—was a matter of importance to both its sender and its sendee. While the Supreme Court, on the former appeal (*Anniston Cordage Co. v. Western Union Telegraph Co.*, 161 Ala. 216, 49 South. 770), declared that the telegram did not, on its face, apprise the telegraph company of the fact that its sendee was beneficially interested in the telegram, nevertheless the telegraph company had knowledge of the fact that the appellee was beneficially interested in it, because the telegram of the Trio Manufacturing Company to appellee was in reply to a message theretofore sent by appellee to said Trio Manufacturing Company, inquiring for quotations on said goods, which message was received and transmitted by the employees of the telegraph company to the Trio Manufacturing Company while acting within the line of their employment.—*Western Union Telegraph Co. v. Williford* (Tex. Civ. App.) 27 S. W.

700; 27 Amer. & Eng. Ency. Law, p. 1066, § 3; 37 Cyc. 1717, § 2, and authorities there cited.

The fact that the appellee, through the appellant, its agents or employees, while acting in the line of their employment, sent a message to the Trio Manufacturing Company asking for quotations on the goods, and that, through the appellant, its agents or servants while acting within the line of their employment, the Trio Manufacturing Company, in reply to said message of inquiry of appellee, sent to appellee the message giving to it the quotations on the goods, was, taken in connection with the contents of the message itself, sufficient notice to appellant that the telegram was for appellee's benefit.— *Erie Telegraph & Telephone Co. v. Grimes,* 82 Tex. 89, 17 S. W. 831.

It follows that the appellee had such an interest in the telegram, and appellant such knowledge of appellee's interest, when it was delivered to it by the Trio Manufacturing Company for transmission and delivery, as will support a special action of trespass on the case by appellee against appellant for the damages sustained by it as the natural and proximate result of any negligence committed by the agents of appellant in the transmission of the telegram, and which flowed from such negligence in the usual course of things.—*Western Union Telegraph Co. v. Albertville Canning Co., Infra,* 59 South. 755; *Western Union Telegraph Co. v. Brown, supra; Anniston Cordage Co. v. Western Union Telegraph Co., supra; Western Union Telegraph Co. v. Jackson,* 163 Ala. 9, 50 South. 316; *Frazier v. Western Union Telegraph Co., supra.*

The above is true without regard to whether the telegram was repeated or not. A telegraph company cannot, by stipulations printed on the blanks on which messages are required to be written, exempt itself from lia-

bility for damages resulting from the negligence of its employees in the transmission and delivery of telegrams. —*American Union Telegraph Co. v. Daughtery,* 89 Ala. 191, 7 South. 660; *Western Union Telegraph Co. v. Chamblee,* 122 Ala. 428, 25 South. 232, 82 Am. St. Rep. 89; *Western Union Telegraph Co. v. Crawford,* 110 Ala. 460, 20 South. 111.

5. The rule seems to be well settled in this state that, when a complaint makes out a cause of action for the recovery of *any* damages, then, if, combined with such damages, the complaint also claims nonrecoverable damages or nonrecoverable elements of damages, demurrer is not the proper way to eliminate from the complaint such nonrecoverable damages or nonrecoverable elements of damages. The proper way to rid the complaint of such nonrecoverable damages or elements of damages is by motion to strike, by objections to evidence, or by special charges to the jury.—*Western Union Telegraph Co. v. Garthright,* 151 Ala. 413, 44 South. 212.

In the present case the goods had been shipped to appellee before the mistake in the telegram was discovered. The complaint, as amended, shows this fact, and that loss, to some extent, on account of appellant's mistake, was inevitable to appellee.—*Pepper v. Western Union Telegraph Co.,* 87 Tenn. 554, 11 S. W. 783, 4 L. R. A. 660, 10 Am. St. Rep. 699; *J. A. Shingleur & Co. v. Western Union Telegraph Co.,* 72 Miss. 1030, 18 South. 425, 30 L. R. A. 444, 48 Am. St. Rep. 604.

6. As the minds of the party who sends a message in certain words, and the party who receives the message in entirely different words, and who acts upon those words, have never met, the appellee, when it discovered the mistake in the telegram, had a right to reject the goods and buy elsewhere. It was not, by virtue of the

telegraphic correspondence, bound to the Trio Manufacturing Company to take the yarns at 16½ cents per pound.—*Pepper v. Western Union Telegraph Co., supra; Shingleur & Co. v. Western Union Telegraph Co., supra; Western Union Telegraph Co. v. Crawford,* 110 Ala. 460, 20 South. 111.

Accepting the allegations of the complaint, as last amended, as true, the natural and proximate result of appellant's mistake in transmitting the message was pecuniary loss to appellee. This being true, and appellee's dilemma being traceable to the fault of appellant, the appellee had the right to extricate itself by adopting that course which, under all the circumstances, would entail upon it the smallest loss. There is nothing in this record indicating that it did not do so, and, to quote the language of the Supreme Court of Tennessee in a case which seems to have been followed by many courts of last resort, "where the conduct of the party injured in his efforts to extricate himself from loss does not appear to have been improvident, nor in bad faith, and the loss is shown from such conduct, the burden of proof is upon the author of the wrong to show that the loss might have been mitigated by a different course of conduct, which a reasonably prudent man ought to have taken."—*Pepper v. Western Union Telegraph Co., supra.*

While the acceptance of the goods by appellee at 16½ cents per pound after the discovery of the mistake in the telegram constituted a *new* purchase—in fact, the only purchase—of the goods, *this* purchase was necessitated by the negligence of appellant, as no one can say that appellee would have ordered the goods from the Trio Manufacturing Company if their true price had been known when the order to ship was given.—*Shingleur & Co. v. W. U. Telegraph Co., supra.*

Whether the major portion of the damages of appellee was, on account of the peculiar situation of appellee, special or larger damages, and, because of a lack of knowledge of appellant of such peculiar situation of appellee, not a proper subject of recovery in this suit (*W. U. Telegraph Co. v. Albertville Canning Co., supra*), is a question that is not before us. A demurrer is not the proper method of presenting that question.—*W. U. Telegraph Co. v. Garthright*, 151 Ala. 413, 44 South. 212. In fact, the argument of appellant in its brief is addressed solely to the proposition that the sendee of a telegram, unless he is the *sole* beneficiary, cannot recover anything for the nondelivery or delay or negligence in the transmission of the telegram. This, as we have above shown, is not the law of Alabama. Failing to present the other questions presented by the demurrer, appellant in fact waived them.—*L. & N. R. R. Co. v. Holland,* 173 Ala. 675, 55 South. 1002; *Dickens v. Dickens,* 174 Ala. 56 South. 809.

7. There is no bill of exceptions in the record. There is in the record a special finding of facts by the trial judge. If the record contained a bill of exceptions, we could not review the special findings of fact upon the evidence extrinsic of those findings. On appeal an appellate court cannot go behind the facts so found by the trial court; but it is authorized to determine whether the judgment is supported by the special finding of the facts.—*Kitchen & Bros. Co. v. Robinson Bros.,* 138 Ala. 419, 35 South. 461; *Chandler v. Crossland,* 126 Ala. 176, 28 South. 420; *Bibb v. Hall,* 101 Ala. 79, 14 South. 98.

Among other statements in the special finding of the facts, we find the following as one of the special findings: "The loss to plaintiff was one cent per pound by reason of the error in the telegram, amounting to $298.87."

[Western Union Telegraph Company v. Anniston Cordage Company.]

If the above statement is true—and we are bound by it—then the judgment in the case is supported by the special finding of the facts. The special finding of the facts shows that the appellee, in accepting the goods at 16½ cents per pound, exercised business prudence, and that in doing so it protected itself from loss." How or from what evidence the trial judge arrived at the above-quoted conclusion as one of his special findings of fact, we do not know. The special finding of facts, however, supports the judgment.—*Kitchen & Bros. v. Robinson Bros., supra; Chandler v. Crossland, supra; Bibb v. Hall, supra; Western Union Telegraph Co. v. Crawford, supra; Pepper v. Western Union Telegraph Co., supra.* It may be that there was evidence in the case tending to show that on the day the Trio Manufacturing Company sent the telegram the appellee could have obtained the yarns at some other point at 15½ cents per pound, and that when it received information as to the error it could not then obtain them anywhere at a less price than 16½ cents per pound. However this may be, the special finding of facts supports the judgment, and this record does not bring the correctness of the special findings before us for review.

The judgment of the court below is affirmed.

Affirmed.