# Western Union Tel. Co. *v.* Baker.

### Failure to Deliver Message.

(Decided June 3, 1915.   Rehearing denied June 30, 1905.
69 South. 246.)

1. **Appeal and Error; Review; Presentation of Grounds Below.**—This court will not, on appeal, consider objections to a complaint not raised or called to the attention of the lower court by any grounds of demurrer or otherwise.

2. **Telegraphs and Telephones; Failure to Deliver; Stipulation.**—While entitled to make and enforce any reasonable rule for the conduct of its business, a telegraph company cannot exempt itself from liability for damages for negligence in transmitting and delivering messages by stipulations printed on the blanks on which messages are to be written.

3. **Same; Jury Question.**—Where the action was ex delicto for delay in the delivery of a telegram, the question of punitive damages was properly submitted to the jury under the evidence in this case, although the complaint alleged that the negligence was willful and wanton.

4. **Same; Damages.**—Where a telegraph company willfully or wantonly delays the delivery of a message, punitive damages may be recovered, although no actual damages are suffered.

5. **Charge of Court; Singling Out Evidence.**—Charges which single out parts of the testimony and give undue prominence thereto tend to confuse and mislead the jury, and are properly refused.

6. **Telegraphs and Telephones; Delay in Delivery; Right to Maintain Action.**—Where the addressee of a telegram is a substantial beneficiary he may maintain an action ex delicto for a failure to deliver.

7. **Same; Jury Question.**—Where the telegram requested the addressee to wire when he would be in New York, and stated that some one else would have to be put in that territory if he was not able to begin work at once, the jury was warranted in inferring that the telegram was at least for the benefit of the addressee.

8. **Same; Evidence; Self Serving Declarations.**—Where the action was for delay in the delivery of a message, and the company sought, for the purpose of showing the good faith of the agent, to introduce in evidence statements made by the messenger to the manager and by the manager to the messenger, and the messenger and the manager were allowed to state the result of their inquiry and attempts to discover the addressee, it was proper to refuse evidence as to other statements, as they were self serving declarations, and not part of the res gestae.

APPEAL from Selma City Court.

Heard before Hon. J. W. MABRY.

Action by J. M. Baker, as administrator, against the Western Union Telegraph Company, for damages for failure to deliver a

[Western Union Tel. Co. v. Baker.]

telegram. Judgment for the plaintiff, and the defendant appeals. Affirmed.

The following charges were refused to the defendant: (X) I charge you that, if you believe from the evidence that the name "Bert Baker" was not in the city directory at the time that the message was received in Selma, then it was not the duty of the defendant to attempt to deliver the message to any of the other persons in said directory under the name of "Baker," unless the defendant knew such other Baker to be the sendee of the message.

(Z) I charge you that there is no presumption of law that Albert B. Baker and Bert Baker are the same persons, and that a telegraph company is not presumed to know that they are the same.

(The judgment and decision of the Court of Appeals in this case was reviewed by the Supreme Court by certiorari, and matters decided and digested in headnote No. 8, were held error and the cause was reversed. See *Ex parte Western U. Tel. Co. v. Baker*, 195 Ala. 359, 70 South. 622.—Reporter.)

PETTUS, FULLER & LAPSLEY, for appellant. KEITH & WILKINSON, and R. H. MANGUM, for appellee.

PER CURIAM.— (1) 1. The first contention of appellant is that the court erred in overruling the demurrers to the fourth and sixth counts, for that said counts charge that the defendant willfully and wantonly failed to deliver the message in a reasonable time, without averment that the defendant knew that the probable consequence of the delay would result in injury. Without discussing the merits of this contention, it is only necessary to state that this point was not raised or called to the attention of the court by any of the grounds of demurrer.

(2) 2. It is next insisted that the court below erred in sustaining the demurrers to pleas 3 and 4, which set up a limitation of liability on the part of the defendant by reason of certain stipulations contained in the contract on the reverse side of the message, limiting the liability of the defendant to $50 for any delay in transmission or delivery of any night letter message, whether caused by the negligence of its servants or otherwise, unless a greater value is stated in writing at the time the message is offered to the company for transmission and an additional sum

paid or agreed to be paid, based on such value, equal to one-tenth of 1 per cent. thereof. This ruling of the court was in line with repeated decisions of this and of our Supreme Court. It is well settled in this state that, while a telegraph company can make and enforce certain reasonable rules and stipulations for the conduct of its business, it cannot, by stipulations printed on the blanks on which messages are required to be written, exempt itself from liability for damages resulting from the negligence of its employees in the transmission and delivery of telegrams.—*Western Union Tel. Co. v. Anniston Cordage Co.*, 6 Ala. App. 351, 59 South. 757; *Daughtery's Case*, 89 Ala. 191, 7 South. 660; *Telegraph Co. v. Crawford*, 110 Ala. 460, 20 South. 111; *Southern Express Co. v. Owen*, 146 Ala. 412, 41 South. 752; *Telegraph Co. v. Chamblee*, 122 Ala. 428, 25 South. 232, 82 Am. St. Rep. 89; *Southern Ry. Co. v. Jones*, 132 Ala. 440, 31 South. 501; *Telegraph Co. v. Louisell*, 161 Ala. 231, 50 South. 87. The cases of *McGehee v. Telegraph Co.*, 169 Ala. 109, 53 South. 205, Ann. Cas. 1912B, 512, and *Western Union Telegraph Co. v. Hill*, 163 Ala. 18, 50 South. 248, 23 L. R. A. (N. S.) 648, 199 Ann. Cas. 1058, cited by appellant, are in conflict with this principle.

(3) 3. The insistence of appellant that the question of exemplary damages should not have been submitted to the jury, and that, under the circumstances in evidence, it was not within the province of the jury to award such damages, and that the motion for a new trial should therefore have been granted, cannot prevail.

This is an action ex delicto, brought by the sendee's personal representative for delay in the delivery of a telegraph reading as follows: "New York, August 9, 1910. Bert Baker, Selma, Ala. Wire when you will be in New York. Unles you are able to get to work at once, we will be unable to wait longer, and will have to put some one else on the territory. Leon Michael & Co."

It was a night letter message, reached Selma at 8:30 a. m., August 10th, but was not delivered until some time on August 12th. The evidence without conflict showed that plaintiff's intestate was a man over thirty years of age, who had lived in Selma all his life, was there at his usual place of abode, his mother's home, being confined to the house on account of illness, all of the period elapsing between the time the message was received in Selma on the morning of the 10th until its delivery some time during the day on the 12th. There was also evidence, among

other circumstances, tending to show that the sendee of the message was well known in the business and social circles of Selma, and that the manager of the defendant company at Selma had for a year resided on the same street with the plaintiff, and only about one block from the latter's home. It was also shown that the manager knew that the message had been received on the morning of the 10th, and had actually handled it. While the message was of a business character, the wording thereof clearly indicated its probable importance to the sendee and the necessity for its prompt delivery. While there was also evidence introduced by the defendant tending to show that its manager and messenger boy were not personally acquainted with the plaintiff's intestate, and that said manager had resided in Selma but a little more than a year, and that efforts were made, though futile, to find the plaintiff during the two days, the weight and credibility of this evidence and the inferences arising therefrom were for the jury, and after a careful perusal of the decisions of our Supreme Court, we are not prepared to say that the trial court erred in submitting the question of punitive damages to the jury, leaving it to them to say whether or not such failure, under the circumstances, was not so grossly negligent as to evince a conscious disregard by the defendant of its duty to plaintiff's intestate. Not only does this status of the evidence distinguish this case from the *Westmoreland Case,* 151 Ala. 319, 44 South. 382, relied on by the appellant, but the action in that case was held to have been ex contractu, involving no element of tort, and dealt with the failure to deliver a message of a social nature. The principles upon which our holding in this case are founded are fully set forth and supported by the following cases: *Western Union Tel. Co. v. Cunningham,* 99 Ala. 314, 14 South. 579; *Telegraph Co. v. Seed,* 115 Ala. 670, 22 South. 474; *Western Union Co. v. Crowley,* 158 Ala. 585, 48 South. 381; *Telegraph Co. v. Stokes,* 171 Ala. 168, 54 South. 181.

Counts 1 and 2 were eliminated by demurrer, and the case was tried on counts 3 to 6, inclusive. Counts 3 and 5 are for simple negligence, and counts 4 and 6 charge conjunctively "willful and wanton" failure to deliver. This might have required a somewhat higher degree of proof than the same averment in the disjunctive. But this was probably waived by the defendant in requesting the court in writing to charge the jury, in substance, that unless they found from the evidence that the defendant

"willfully *or wantonly* failed to deliver the message," they could not assess punitive damages against the defendant; also in using this disjunctive expression in several other special charges along the same line, which the court gave. But even with the averment treated as being in the conjunctive, under the evidence in this case, we do not feel justified in putting the trial court in error· for submitting the question of exemplary damages to the jury.

(4) 4. The question of actual damages was eliminated by the court's oral charge and the several special charges. The action of the court in giving charge 6 is assigned as error, which charge is as follows: "I charge you that punitive damages may be awarded by you even though you may find no actual damages are recoverable."

This was a correct statement of the law. See *A. G. S. R. R. Co. v. Sellers,* 93 Ala. 9, 9 South. 375, 30 Am. St. Rep. 17, and the cases there cited; also *Birmingham Ry. Co. v. Nolan,* 134 Ala. 329, 32 South. 715; *Goodson v. Stewart,* 154 Ala. 660, 46 South. 239; *L. & N. R. R. Co. v. Smith,* 141 Ala. 335, 37 South. 490; and *Telegraph Co. v. Stokes,* 171 Ala. 168, 54 South. 181. In these cases and those cited therein the law has long been settled in this state that the infliction of actual damage is not an essential predicate to the imposition of exemplary damages. The case of *Western Union Tel. Co. v. Brown,* 6 Ala. App. 339, 59 South. 329, is not in conflict with this view. That case merely follows that line of cases which have established the rule that in special actions on the case against telegraph companies for a failure to deliver or for negligence in transmission or delivery of a telegram the law will not permit a recovery for mental pain and anguish unless there is a right of recovery aside from such injuries; mental anguish being classed as one of the elements of actual damage. See *Western Union Co. v. Blocker,* 138 Ala. 484, 35 South. 468; *Western Union Co. v. Anniston Co.,* 6 Ala. App. 351, 59 South. 757; *Blount's Case,* 126 Ala. 105, 27 South. 779; *Westmoreland Case, supra; Western Union Co. v. Jackson,* 163 Ala. 9, 50 South. 316.

(5) 5. Charges X and Z were properly refused, if for no other reason than that they singled out certain parts of the testimony, ·thus having a tendency to mislead the jury as to the importance of such testimony.

6. There was no error in excluding certain answers of the witness Sims, appellant's manager at Selma, touching conversa-

tions between him and appellant's messenger relating chiefly to the statement made by the messenger to the manager when the former returned with the undelivered message as to the sendee's whereabouts, and to instructions which the manager gave the messenger with respect to the efforts he should make in attempting to deliver the message, etc. These were conversations between the two agents of the defendant in the absence of the plaintiff, in part narrative of and relating to a past transaction, and as to the instructions given the messenger by the manager to which the latter deposes, they were in the nature of self-serving declarations, and cannot be regarded as a part of the res gestæ. The testimony of the manager as to what the messenger reported to him upon the latter's return with the message was manifestly objectionable as hearsay.

(6, 7) 7. The affirmative charge as requested by the defendant was properly refused. The appellant contends that the evidence shows that the telegram was sent for the benefit of the sender, and not for the benefit of Baker, the sendee, and that under the authority of *Postal Tel. Co. v. Ford*, 117 Ala. 672, 23 South. 684, *Telegraph Co. v. Adams*, 154 Ala. 657, 46 South. 228, and *Adair's Case*, 115 Ala. 441, 22 South. 73, the affirmative charge should have been given. The cases cited were all actions ex contractu, while it is well settled that in actions ex delicto, like the present, the sendee may maintain a special action on the case when he is a substantial beneficiary, not the sole beneficiary, of such telegram, and the telegraph company, when it receives a telegram for transmission, knows, or the telegram shows, that it is sent for the benefit of the sendee. The jury might well have inferred from the language of this telegram that the plaintiff's intestate was a substantial beneficiary, and that this fact was indicated to the telegraph company by the wording of the message itself when received for transmission. See *Telegraph Co. v. Anniston Cordage Co.*, 6 Ala. App. 351, 59 South. 757, wherein the rules are clearly laid down and the authorities collated.

The principles we have announced are, we believe, sufficiently comprehensive to render unnecessary a consideration of the other questions involved.

There is no error in the record, and the judgment is affirmed.

Affirmed.

NOTE. The foregoing opinion was prepared by Judge CRUM, and was adopted by the court after his retirement.

ON REHEARING.

THOMAS, J.—In the original opinion, to which we adhere, we disposed of adversely to the appellant every contention made by it in its application for rehearing. We do not deem it necessary to add anything to what we there said, except upon one proposition, which we there treated briefly, and as to which it may be well to amplify the discussion, with the view of preventing any misunderstanding, which appears to be the case with appellant's counsel, as to our holding on that point.

(8) We there held that the trial court did not err in excluding certain answers of the witness Sims, appellant's manager, touching conversations between him and appellant's messenger boy relative to the delivery of the telegram to Baker, the sendee. The integrity of our holding will be demonstrated, we think, by setting out these several answers of the said witness Sims, appellant's said manager, that were so excluded, and which are, respectively, as follows, to-wit:

(1) "And the boy [meaning the messenger boy] returned to me [with the telegram undelivered] and told me he got the information at Smith's grocery store that Bert Baker [the sendee of the telegram] was out of town, and had gone to New York, and that Smith's store was the place where said Baker hung out, or that he had an office above Smith's store."

(2) "On the return of the boy and his report he was instructed to go around to all of the hotels and trace for Baker, and on his return he reported that he tried all the hotels and had failed to find him [Baker]."

(3) "It was my information that Mr. Baker's headquarters were at Smith's grocery store, or that he had an office above, and that when he was in town he could always be found at Smith's grocery store; this information having been furnished me by the messenger boy."

These several answers so excluded were admissible, appellant's counsel contend, as a part of the res gestæ of what was said and done in and about the effort to deliver said telegram and for the purpose of showing good faith on the part of appellant's servants or agents in such effort, and thereby of negativing the implication of wanton or willful injury arising, so we held in the opinion, as an inference from plaintiff's evidence. It was upon this theory of res gestæ that the court properly per-

[Western Union Tel. Co. v. Baker.]

mitted the messenger boy himself to testify as a witness for defendant, not only as to all he did in trying to deliver said telegram, but also as to all information, though it was mere hearsay, he gained from others, while so doing, as to the hanging-out place and present whereabouts of the sendee; for instance, he testified that he was informed by Mr. Smith that the sendee was not in town, but was in New York, and that then he (the messenger boy) went around twice to all the hotels in town inquiring of the clerks for the sendee, and that each and all informed him that they did not know Baker, the sendee, or his whereabouts. Suppose these statements of the boy were untrue (which, of course, was for the jury to say, as was held in the opinion)—that is, suppose that the boy did not make the inquiries, nor receive the information claimed, or that, if received, he knew it was false, and that, instead of doing what he claimed he did towards delivering the telegram, he willfully or wantonly made no effort at all to deliver it, as was the case in *P. T.-C. Co. v. Nail,* 12 Ala. App. 317, 66 South. 903—would not the defendant company, under the facts and circumstances proved by plaintiff as stated in the opinion, be liable for willful or wanton injury, just as it would for the negligence of the boy, and this notwithstanding the boy may have falsely reported to the manager to the contrary and in accordance with what the manager claims, in the answer excluded, was reported, and notwithstanding the manager may have honestly believed said reports?

The defendant company had a right, it is true, to show inferentially by proper evidence the good faith of each, the manager and the messenger boy, since the company was equally as liable for the willful or wanton misconduct of each as for the negligence of each in failing to deliver said telegram; and, while the good faith of either may be predicated upon information, if honestly believed, imparted by others, for whose acts the company is not liable, as to the whereabouts and location of the sendee, although that information is mere hearsay and is false, yet the good faith of neither can be predicated upon supposedly correct information received from the other when the other knows it to be false, because the company is as much liable for the act of the one as for the act of the other. Hence, if the messenger boy had not, in fact, been informed, as he claimed to the manager he had been, as to the hanging-out place and whereabouts of the sendee, and had not, in fact, made the efforts, as he

reported to the manager he had made, to deliver the telegram to the sendee, the manager's belief in such claim and reports would be immaterial. It seems to us axiomatic that the good faith of one agent cannot be predicated upon the bad faith—the false statements—of another agent, when the principal is as liable for the act of the one as for the act of the other. If so, the proposition would logically lead to this absurdity: The good faith of the manager could be predicated upon false statements of the boy, and the good faith of the boy could be predicated upon false statements of the manager, and, each having acted in good faith on false information imparted by the other, the principal would not be liable for punitive damages. Where false information is relied on by either agent as a basis for honest belief and good intentions, it must, it seems to us, have emanated from persons for whose negligence or bad faith in imparting it the principal is not responisble. Each agent is a part of one and the same legal entity—the principal—and to permit the introduction in evidence of secret conversations between such agents to be received as evidence of the good faith of the principal whom they each represent would not only be wrong in principle, but would open a wide door to fraud; would be equivalent, it seems to us, to allowing the principal to testify to his own secret mental operations with respect to the matter involved in the conversation; would be equivalent to allowing the principal to testify to a dialogue that took place between the faculties of his own mind.

Under the doctrine of res gestæ, the manager might have been allowed to testify, as was the messenger boy, to any information he received, if any, from outside sources as to the hanging-out place and whereabouts of the sendee, and as to what he did or what the boy did, to his personal knowledge, in trying to locate such sendee. This would have been admissible, just as was the boy's testimony, as a part of the res gestæ, and for the purpose of showing good faith and negativing willful or wanton injury in failing to deliver said telegram. But we cannot subscribe to the doctrine that good faith, such as the law requires, can be rested upon what secretly transpired or took place between two agents of the principal, one of which agents, the manager, was charged with the duty of seeing that the other, the messenger boy, delivered the telegram, and the other of which, the messenger boy, with the duty of delivering it.

So the material inquiry, as bearing on the question of good faith, is not what the boy may have said or reported to the man-

ager as to the information received by him from others as to the whereabouts of the sendee, and as to what he (the boy) had done towards delivering the telegram, but is: "Did the boy, in fact, receive the information mentioned, and did he, in fact, make the efforts claimed towards delivering said telegram? If he did not, then, even though he reported to the manager that he did, it would be entirely immaterial. If he did, then the fact that he did, and not the fact that he so reported to the manager, would be the material fact. In determining whether he did or not, it is not permissible that his testimony to the effect that he did be bolstered up by proving that, prior to testifying, and at the time of the transactions, he made declarations or reports to the manager which were in conformity with what he testified. Such a bolstering up would have been the only effect of permitting the excluded answers of the manager to remain in evidence, and the court therefore did not err in excluding them.